IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>        Plaintiff,<br><br>    v.<br><br>DOROTHY BROWN, in her official capacity as the Clerk of the Circuit Court of Cook County, Illinois,<br><br>        Defendant. | Case No: 17-cv-7933<br><br>Honorable Matthew F. Kennelly |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

10874847

**Introduction**

The First Amendment to the U.S. Constitution guarantees the press a presumptive right of access to civil court records. This right "is an indispensable predicate to free expression about the workings of government," *Courthouse News Serv. v. Planet*, 750 F.3d 776, 787 (9th Cir. 2014) ("*Planet I*"); *Courthouse News Serv. v. Planet*, 614 F. App'x 912, 914 (9th Cir. 2015) ("*Planet II*"), and "a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous." *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994).

Reporters have traditionally visited the Clerk's Office of the Circuit Court of Cook County, Illinois ("Circuit Court") on a daily basis to review the day's new civil complaints. For decades, reporters saw (and still see) paper-filed actions right after they cross the intake counter in the Clerk's Office, before the performance of administrative tasks associated with the complaint's intake. This allows the press to review and report on new lawsuits in a timely manner, fulfilling the press' role as "surrogates for the public" who acquire information about their courts "chiefly through the print and electronic media." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980).

But with the advent of e-filing – now voluntary, but set to become mandatory January 1, 2018[1] – the Clerk's Office is withholding e-filed complaints from press review until after the performance of administrative processing. The Clerk's Office does this even though reporters still review paper complaints before processing; even though an e-filed complaint is "filed" when received by the Clerk's Office; and even though the Clerk's practice means almost 40% of e-filed complaints are withheld from press review from anywhere between one and 28 days.

---

[1] *See* ILL. S. CT., M.R. 18368 (eff. Jan. 22, 2016), a true and correct copy of which is attached hereto as **Exhibit A**.

1

These denials of access, while temporary, hurt public discussion about new civil actions, and violate the First Amendment. "Litigation is a public exercise; it consumes public resources. It follows that in all but the most extraordinary cases . . . complaints must be public." *Levenstein v. Salafasky*, 164 F.3d 345, 348 (7th Cir. 1998). Conversely, where a complaint is withheld, even temporarily, it "leaves the public unaware that a claim has been leveled and that state power has been invoked – and public resources spent – in an effort to resolve the dispute." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016). Delays also lead to inaccurate reporting and allow plaintiffs to control news coverage of new actions.

Having failed in its efforts to work cooperatively with the Clerk's Office to resolve these delays, Plaintiff Courthouse News Service ("CNS") now asks this Court for a preliminary injunction prohibiting Defendant from enforcing her unconstitutional policy and practice of withholding newly e-filed complaints until after administrative processing, and requiring her to provide contemporaneous access to them upon filing, so the press can review and report on them in the same timely manner as they have done for decades with paper complaints.

**Statement of Facts**

**A.     About CNS**

Founded in 1990, CNS is a nationwide news service that reports primarily on the civil court record. Declaration of William Girdner ("Girdner Dec."), ¶¶ 4-8, attached hereto as **Exhibit B**. Its more than 240 reporters and editors cover approximately 2,600 state and federal courts in all 50 states. *Id*. at ¶ 4. Among its more than 2,000 subscribers are Chicago area law schools, libraries and law firms. *Id*. at ¶ 10. Other media also subscribe, from the *Los Angeles Times* to the *Boston Globe*, putting CNS in the position of a pool reporter for news about civil litigation. *Id*. at ¶¶ 10-11.

CNS has many publications, including "New Litigation Reports," which feature staff-written summaries of significant new civil complaints, and a website that is updated daily with staff-written articles and has hundreds of thousands of readers per month. Girdner Dec., ¶ 5. CNS's reporting has been credited as the source for stories by many news outlets, including newspapers (e.g., *The New York Times*, *The Wall Street Journal*); magazines (e.g., New York Magazine, U.S. News and World Report); television news (e.g., ABC News, Fox News); online-only publications (e.g., The Daily Beast, Politico); and radio (e.g., NPR). *Id*. at ¶ 9.

To prepare the New Litigation Reports and to monitor court activity for potential coverage on CNS's website, CNS reporters visit their assigned courts on a regular basis to review new civil complaints. *Id.* at ¶ 6. Some courts now make complaints accessible on the Internet, but in-person review at the courthouse remains the norm at most courts. *Id.* at ¶¶ 6, 14-15; *see also* Declaration of Adam Angione ("Angione Dec."), ¶¶ 6-7, 28, 30, 33, 35, attached hereto as **Exhibit C**. In larger courts, such as the Circuit Court, CNS reporters visit their assigned court every day to review complaints as they are filed. *See* Angione Dec., ¶¶ 6-7. CNS covers the Circuit Court in its *Cook County Report*, which is e-mailed each weekday evening to more than 100 subscribers with thousands of readers. *Id.* at ¶ 7. CNS's Chicago reporter, Lisa Klein, makes daily visits to review newly filed civil complaints for inclusion in the *Cook County Report*, and identify especially newsworthy actions to feature on CNS's website. *Id.*

B.     <u>**A Tradition of Contemporaneous Access on Receipt**</u>

Since at least as early as 1997, when CNS first began covering the Circuit Court, it has reviewed new complaints alongside reporters from other news outlets, including the *Chicago Tribune*, the *Chicago Sun-Times* and the *Chicago Daily Law Bulletin*. Girdner Dec., ¶ 16. In both the Chancery and Law Divisions, reporters retrieve paper-filed complaints right after they

3

cross the intake counter and before the performance of administrative tasks associated with the intake of a new civil complaint, often referred to as "processing."[2] Angione Dec., ¶¶ 10-11. This enables reporters to report on virtually all of the new paper-filed civil complaints received on any given day. *See* Girdner Dec., ¶ 17; Angione Dec., ¶ 16. This traditional access upon receipt was similar to the practices followed by other major state and federal courts, including this Court. Girdner Dec., ¶¶ 17-18. Most civil complaints are still filed in paper form at the Circuit Court, and reporters still review paper-filed complaints upon receipt, before intake tasks are completed. *See* Angione Dec., ¶¶ 16, 19.

With the introduction of permissive e-filing in 2009, the Clerk's Office initially continued this traditional access by printing out e-filed complaints, which reporters saw before processing along with the paper-filed complaints. *See id.* at ¶ 13. This was consistent with the pre-processing access to e-filed complaints currently provided at other state and federal courts, although most (including this Court) provide that access through a website or computer terminal in the clerk's office. Angione Dec., ¶¶ 30-31, 33, 35; Girdner Dec., ¶¶ 15, 29. This kind of electronic access to new e-filings, prior to processing, can be thought of as an electronic in-box akin to the physical bins where the press retrieved new paper complaints, and it enables the press to see new e-filed complaints as soon as they are received for filing, before official "acceptance," assignment of a case number, or other administrative processing.

C. **Circuit Court's Change In Access Policy, And CNS's Efforts At Resolution**

In January 2015, the Clerk's Office stopped printing out new e-filed complaints and began withholding them from review until after staffers completed administrative processing tasks, including formal "acceptance." Angione Dec., ¶ 13. The complaints were then posted to

---

[2] "Docketing" was the term historically used to describe many of the administrative intake tasks now referred to as "processing."

computer terminals located in the Clerk's Office and in the press room one floor below. *Id.* This meant a substantial percentage of the complaints that were e-filed on any given day could not be seen until the next day at the earliest, with longer delays common. *Id.* at ¶¶ 14-15.

CNS sought to resolve the problem by alerting the Clerk's Office to the delays in access caused by the withholding e-filed complaints until after administrative processing, and requesting that the media be provided access to complaints upon receipt, irrespective of whether processing had been completed. Girdner Dec., ¶¶ 40, 42, Ex. 8. CNS also provided the Clerk's Office with information about how other courts – including state courts in New York, Georgia, Nevada, Connecticut, Alabama, Utah, and the vast majority of federal district courts – provide access to newly e-filed complaints on receipt prior to clerk review, assignment of a case number, or formal "acceptance," and explained this need not be provided via the Internet, but could occur through the same courthouse terminals already being used to provide delayed access. *Id.*

On March 15, 2017, CNS was informed that the Clerk's Office could not provide this access because § 4.30 of the Electronic Access Policy for Circuit Court Records of Illinois Courts prohibited the Clerk from providing online electronic access to complaints. *Id.* at ¶ 41. On April 20, CNS sent follow-up correspondence to the Clerk's Office pointing out – again – that providing access prior to administrative processing need not require access over the Internet; such access could be provided locally through the courthouse computer terminals. *Id.* at ¶ 42.

On June 23, 2017, the Clerk's Office informed CNS that it would continue withholding access to e-filed complaints until after administrative processing, including official "acceptance," and the Clerks' Office "plan[ned] to continue this practice when eFiling becomes mandatory."[3] Girdner Dec., ¶ 45, Ex. 11. In this instance the Clerk's Office cited two other sets of rules – the

---

[3] CNS's experience has been that access delays increase when e-filing becomes mandatory. Girdner Dec., ¶ 21; Angione Dec., ¶ 18.

Illinois Supreme Court's Electronic Filing Standards and Principles ("Standards and Principles"), as amended September 16, 2014, and Circuit Court General Administrative Order 2014-02 ("GAO 2014-02") – in support of its position that providing access upon receipt and before administrative processing would mean "the press would essentially be given access to cases that may be rejected by the Clerk's Office" and that "would not be considered officially filed." *Id.* This, the Clerk's Office states, "could create mass confusion for the public, if the press reports on a case that may never actually be resubmitted for filing; leading to false reporting and potential liability for the court and the press." *Id.*

Following receipt of the Clerk's June 23, 2017 letter, CNS tracked access delays at the Circuit Court. *See* Angione Dec., ¶ 19. For the four-month period from June through September 2017, CNS saw 94% of paper-filed complaints contemporaneously on the day of filing. *See id.*, Ex. 4. In contrast, CNS only saw approximately 60% of e-filed complaints on the day of filing. *Id.* The remaining 40% – two out of every five complaints – were withheld from the press for a day or more, with delays stretching up to twenty-eight days in one instance. *Id.*

Some days were worse. For example, on two days in July, three days in August, and two days in September, ***none*** of the new e-filed cases could be seen by the press until the following day or longer. On twelve other days during the four-month period examined, more than half of all e-filed complaints were withheld. *Id.* at ¶ 20. Oftentimes, the complaints that are withheld are some of the most newsworthy, such as in the case of the recent suit filed against Major League Baseball and the Chicago Cubs by a fan alleging he was severely injured by a foul ball due to the lack of protective netting in place at Wrigley Field. *See* Angione Dec., ¶ 21.[4] In that

---

[4] Complaints filed just before the Clerk's Office closes at 4:30 p.m. are often withheld. Angione Dec., ¶ 15. And CNS never has access to complaints filed after the Clerk's Office closes, even

instance, the complaint was not made available to the public by the Clerk's Office until a full week after it was filed, although the *Chicago Tribune* apparently received a copy of it from plaintiff's counsel in the interim as it ran a story on the complaint on October 9, 2017, well ahead of when CNS could see the complaint or was even aware that it had been filed. Angione Dec., ¶ 21, Ex. 5. And a delay of even one court day means actual delays for the press and public of three, four, or even five days with intervening weekends and/or holidays. *See id.* at ¶ 14; Girdner Dec., ¶ 34.

## Argument

A plaintiff seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) likely irreparable harm without the injunction; (3) the harm plaintiff would suffer absent an injunction is greater than the harm to defendant if an injunction is granted; and (4) the injunction is in the public interest. *See Judge v. Quinn*, 612 F.3d 536, 546 (7th Cir. 2010) ("These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted.").

"[I]n First Amendment cases, 'the likelihood of success on the merits will often be the determinative factor.'" *Am. Civil Libs. Union v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (quoting *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004)). This is because "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" and "'injunctions protecting First Amendment freedoms are always in the public interest.'" *Id.* at 590 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) and *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)).

---

though complaints received before midnight on a court day are given that day's "filed" date and could easily be seen via computer terminals in the press room, which stays open late. *Id.*

7

A.  **CNS Is Likely To Succeed On The Merits**

"The public's right of access to court proceedings and documents is well-established." *Grove Fresh*, 24 F.3d at 897. "Justified originally by common-law traditions predating the enactment of our Constitution, the right of access belonging to the press and the general public also has a First Amendment basis." *Id.* Other courts have had little trouble in concluding that this right of access applies to civil complaints, and a similar result is likely where, as here, the Seventh Circuit has directed that "complaints must be public." *Levenstein*, 164 F.3d at 348. There also can be little dispute that where the right of access applies, it must be "immediate and contemporaneous." *Grove Fresh*, 24 F.3d at 897.

Perhaps to distinguish her office's practice from those of other state court clerks whose similar process-first access practices have been enjoined by other federal courts as unconstitutional, Defendant avoids using the term "processing" to describe what her staff is doing after an e-filed complaint is received but before it becomes public; instead, calling those tasks "the accept/reject function." But under the very Illinois court rules on which Defendant relies, complaints are "filed" with the Clerk *when they are received*. Since there is a First Amendment right of contemporaneous access that attaches when a new complaint is received for filing, Defendant cannot continue withholding access until after administrative processing (no matter what label she uses to describe it) unless she satisfies her "formidable" burden of proof to justify the delays in access. *See In re Associated Press v. Ladd*, 162 F.3d 503, 506 (7th Cir. 1998) ("Overcoming the presumption, however, is a formidable task."). This she cannot do, and CNS has thus shown a likelihood of success.

8

1. **There is a First Amendment Presumptive Right Of Contemporaneous Access To Civil Complaints As Soon As They Are Received For Filing**

There can be little doubt a complaint is among those court records to which the First Amendment right of access applies. Applying the Supreme Court's two-part "experience and logic" test, *see Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*"), to find a First Amendment right of access to complaints, the Second Circuit observed that "[c]omplaints have historically been publicly accessible by default, even when they contain arguably sensitive information." *Bernstein*, 814 F.3d at 141. Logic also supports this constitutional right. A complaint "is the cornerstone of every case, the very architecture of the lawsuit. . . . It is the complaint that invokes the powers of the court, states the causes of action, and prays for relief." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 2016 WL 1071107, at *8 (S.D.N.Y. Mar. 18, 2016), *aff'd*, 814 F.3d 132 (2d Cir. 2016) ("A complaint is the quintessential judicial document. A complaint is the invocation of the power of one branch of government to resolve an otherwise-private dispute."); *accord In re Nvidia Corp. Deriv. Litig.*, 2008 WL 1859067, at *3 (N.D. Cal. Apr. 23, 2008) (a complaint "*provides* the causes of action. . . . It *establishes* the merits of the case, or the lack thereof. . . . when a plaintiff invokes the Court's authority by filing a complaint, the public has a right to know who is invoking it, and it and toward what purpose, and in what manner."); *Skolnick v. Altheimer & Gray*, 730 N.E.2d 4, 16 (Ill. 2000) (finding First Amendment right of access to pleading containing counterclaim).

At the Circuit Court, e-filed complaints received by the Clerk's Office before midnight on a court day are "filed" when they are received. Paragraph 3 of the Standards and Principles provides, in relevant part:

> Any electric document or record submitted to the clerk of court for filing shall be deemed filed if not rejected by the clerk. The transmission date and time of transfer shall govern the electronic file mark. Documents received by the clerk before midnight on a day the courthouse is open shall be deemed filed that day.

*See* Standards and Principles, ¶ 3, attached hereto as **Exhibit D**; *see also* GAO 2014-02, Paragraph 3(b) & (c), which provides similar guidance, attached hereto as **Exhibit E**.

Contrary to what Defendant asserts, the Standards and Principles and GAO 2014-02 ***do not*** "expressly provide that eFiled complaints are deemed received, or filed, upon the Clerk's Office's 'acceptance' of said document." *But see* Girdner Dec., Ex. 11. Nor do they say anything at all about "official filing." Rather, they say that a document that is received for filing before midnight on a court day is deemed filed when it is "received," ***unless*** it is later rejected.[5] "The first amendment right of access extends to documents ***submitted*** in connection with a judicial proceeding." *U.S. v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989) (emphasis added); *accord Rocky Mountain Bank v. Google*, 428 F. App'x 690, 692 (9th Cir. 2011) (rejecting theory that "if a document is lodged, rather than filed, with the court, it is not a judicial record or document at all and, therefore, the public is generally not entitled to access").

At bottom, Defendant's argument is that a complaint is not a public record until after completion of administrative tasks, aka processing, but this theory has been rejected by every other district court to have considered this proposition. In issuing an injunction invalidating a California clerk's similar policy of denying access to newly received complaints until after the completion of intake tasks, the Central District of California observed:

> [I]t would be nonsensical for a qualified right of access to arise only after a complaint has been "processed," for such a rule would run contrary to the text of and purpose underlying various rules of court . . . which require[] that complaints be "deemed filed on the date [they are] received by the court clerk. . . . It would make little sense to restrict the media's ability to monitor until after court personnel have had an opportunity to delay providing access . . .

---

[5] This is further confirmed by the notice that a filing party receives after the filing of a complaint, which includes the date and time of filing as well as the date and time of acceptance. *See* Angione Dec., ¶ 15. As these notices reflect, filing and acceptance are two different things.

10

*Courthouse News Serv. v. Planet*, 2016 WL 4157210, at *13 (C.D. Cal. May 26, 2016) ("*Planet III*") ("the qualified right of timely access to newly filed complaints arises when a complaint is received by a court, rather than after it is 'processed.'"); *see also Courthouse News Serv. v. Jackson*, No. 09-cv-01844, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (granting preliminary injunction and holding denial of access to petitions while clerk checked them for compliance with court rules was "effectively an access denial" and "unconstitutional"); *Courthouse News Serv. v. Tingling*, No. 1:16-cv-08742, 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016) ("*Tingling* Order"), Girdner Dec., Ex. __ at 46:18-22[6] ("I find that the clerk may not prevent the press from accessing newly filed documents because of its review and logging procedures."); *accord* 2016 WL 8505086 (S.D.N.Y. Dec. 16, 2016).

It is well-established that "the values that animate the presumption in favor of access require as a 'necessary corollary' that, once access is found to be appropriate, access ought to be 'immediate and contemporaneous.'" *Associated Press*, 162 F.2d at 506-07 (quoting *Grove Fresh*, 24 F.3d at 897); *accord In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1310 (7th Cir. 1984).[7] It is only while cases are still "current news that the public's attention can be commanded." *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 250 (7th Cir. 1975); *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989) (delaying access "unduly minimizes, if it does not

---

[6] Because the Westlaw version of the *Tingling* hearing transcript is not star paginated, page cites are to the ECF version of the transcript attached as Exhibit 2 to the Girdner Declaration.

[7] Other courts have agreed, finding that even short access delays are access denials that implicate the First Amendment. *See, e.g., Doe v. Public Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("we . . . emphasize that the public and press generally have a contemporaneous right of access to court documents"); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27 (2d. Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance of immediate access where a right to access is found"); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) (delaying access to court filings, even for "as little as a day," "delays access to news, and delay burdens the First Amendment"); *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1147 (9th Cir. 1983) (withholding new filings for 48 hours was "a total restraint on the public's first amendment right of access").

11

entirely overlook, the value of 'openness' itself, a value which is threatened whenever immediate access . . . is denied"). Delays also mean less accurate and balanced reporting about civil cases, harming "CNS's protected expression" about civil suits, as well as "the expression of the newspapers, lawyers . . . and others who rely on CNS for information . . . the public cannot discuss the content of . . . complaints about which it has no information." *Planet I*, 750 F.3d at 788.

Consistent with this, federal courts in California, New York, and Texas have issued injunctions barring clerks from withholding civil complaints for even a short time. *Planet III*, 2016 WL 4157210, at *12 (granting permanent injunction prohibiting clerk from withholding complaints filed in the final ninety minutes of the court day until the next court day); *Tingling* Order at pp. 3-4, 34, 46 (granting preliminary injunction where one-third of complaints were withheld for at least one day, and rejecting position that "[t]he next business day . . . is immediate enough"); *Jackson*, 2009 WL 2163609, at *4 (rejecting argument that a "'slight delay' in availability is a reasonable time, place or manner restriction," and finding that "the 24 to 72 hour delay in access is effectively an access denial and is, therefore, unconstitutional.").[8]

### 2. Defendant Cannot Meet Her Burden To Justify The Delays In Access

Since even short access delays implicate the presumptive constitutional right, Defendant cannot withhold complaints even temporarily unless she can satisfy her burden to show her practice is (1) essential to preserve higher values and (2) is narrowly tailored to serve that interest. *Grove Fresh*, 24 F.3d at 897 (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*")). "Overcoming the presumption . . . is a formidable task.

---

[8] The only district court decision to hold otherwise is currently on appeal. *See Courthouse News Serv. v. Yamasaki*, No. 17-cv-00126, 2017 WL 3610481 (C.D. Cal. Aug. 7, 2017), *appeal docketed*, No. 17-56331 (9th Cir. Sept. 5, 2017).

10874847

A court must be 'firmly convinced that disclosure is inappropriate before arriving at a decision limiting access.'" *Associated Press*, 162 F.3d at 506 (quoting *Grove Fresh*, 24 F.3d at 897). "Any doubts must be resolved in favor of disclosure." *Grove Fresh*, 24 F.3d at 897. Defendant must present evidence sufficient for the Court to make "on the record findings." *See Press-Enterprise II*, 478 U.S. at 14-15 ("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [the right to a fair trial].").

As was true for the New York clerk in *Tingling*, who also justified his process-first policy on the possibility a complaint might be rejected, *Tingling* Order at 24:7-29:17, Defendant "fail[s] to meet [her] burden of demonstrating [her] policy of refusing to provide the public and press access to newly filed complaints until after they are logged is either essential to preserve higher values or is narrowly tailored to serve that interest." *Id.* at 52:18-23. Here, Defendant claims news reports about rejected complaints would "create mass confusion," and could lead to "false reporting and potential liability for the court and the press," but the possibility a complaint might be rejected is one not unique to e-filing, Girdner Dec., ¶¶ 45-46, and, in any event, is faced by every court. Further, this argument is illusory as CNS is unaware of a single instance where reporting on a rejected complaint resulted in any liability for a court or the press. *Id.* at ¶ 46. Other courts provide access on receipt, including to complaints that might later be rejected, without issue. *See id.* at ¶ 28. Defendant's practice is thus not "essential to withholding higher values." Nor is it narrowly tailored; it is easy to provide notice to the press and public that new e-filed complaints may be rejected, as other state courts do.

**B.     The Other Injunction Factors Favor CNS; Bond Should Be Waived Or Nominal**

"The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate." *Christian Legal,* 453 F.3d at 859. "[E]ven short

13

10874847

deprivations of First Amendment rights constitute irreparable harm." *Higher Soc'y of Ind. v. Tippecanoe County*, 858 F.3d 1113, 1116 (7th Cir. 2017). As the federal courts in *Tingling* and *Jackson* found, "CNS would be irreparably harmed without the injunctive relief" because "loss of First Amendment freedoms even for minimal period of time unquestionably constitute[s] irreparable injury." *Tingling* Order at 53:1-3; *Jackson*, 2009 WL 2163609, at *4.[9]

"Moreover, once the moving party establishes a likelihood of success on the merits, the balance of harms 'normally favors granting preliminary injunctive relief' because 'injunctions protecting First Amendment freedoms are always in the public interest.'" *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013). That rule holds true here. Absent an injunction, the continued access delays will "deter informed public discussion of ongoing judicial proceedings" because "CNS cannot report on complaints" Defendant withholds. *See Planet I*, 750 F.3d at 787-88. Defendant is already providing access to e-filed complaints on a delayed basis, and entering an injunction would only require her to provide access to the same documents, but on a contemporaneous basis, as is done in other state and federal courts. "[T]he balance of hardships tips in CNS's favor" because "CNS will be denied its First Amendment right of access to new case-initiating documents unless the Court issues this preliminary injunction while the clerk has alternative constitutional ways to address" its concerns. *Tingling* Order at 53:5-9; *accord Jackson*, 2009 WL 2163609, at *5. And "[t]here is, of course, an important First Amendment

---

[9] Moreover, the Eleventh Amendment bars CNS from seeking monetary damages, which also makes the harm to CNS irreparable. *See Joseph v. Bd. of Regents of Univ. of Wisc. Sys.,* 432 F.3d 746, 748 (7th Cir. 2005) (citing *Will v. Mich. Dep't. of State Police,* 491 U.S. 58, 76 (1989)). "[D]elays in access [also] diminish the value of [CNS's] reports, leading to a loss of goodwill . . . widely recognized as an injury incapable of ascertainment in monetary terms." *Jackson*, 2009 WL 2163609, at *4 n. 4. Loss of goodwill for CNS is evidenced here by subscriber complaints, as well as lost opportunities for timely reporting. Girdner Dec., ¶¶ 35-38.

14

interest in providing timely access to new case-initiating documents." *Tingling* Order at 53:14-17; *Jackson*, 2009 WL 2163609, at *5.[10]

## Conclusion

"[W]hen claims for disclosure are based, at least in part, on the first amendment, there is a tradition of openness in this country that cannot be taken lightly." *In re Cont'l Ill. Secs. Litig.*, 732 F.2d at 1314. It follows that a tradition of contemporaneous access to complaints should not be undercut by a change in the way complaints are transmitted to court. But that is precisely what will happen unless this Court intervenes. CNS thus requests that this Court enter an injunction restraining Defendant from denying CNS's right of contemporaneous access to new e-filed complaints and further requiring her to provide access to new complaints contemporaneously with their receipt by the Circuit Court Clerk.

Date: November 8, 2017                                       Respectfully submitted,

                                                             BRYAN CAVE LLP

                                                             By: /s/ Brian A. Sher

Brian A. Sher, ARDC 6196964
Donald A. Cole, ARDC 6299318
BRYAN CAVE LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: (312) 602-5000
Fax: (312) 602-5050

*Attorneys for Plaintiff Courthouse News Service*

---

[10] As for the Federal Rule of Civil Procedure 65(c) bond, it is a security device this Court has discretion to waive or set at a nominally under "appropriate circumstances." *Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 701 (7th Cir. 1977. The *Tingling* court required $5,000, *Tingling* Order at 53:18-20, and the *Jackson* court $1,000, 2009 WL 2163609, at *5.

15

10874847

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing Memorandum of Law in Support of its Motion for Preliminary Injunction was served on November 8, 2017, via email and U.S. Mail, 1st Class, on the following:

Kelly Smeltzer, General Counsel
State of Illinois – First Judicial District
Office of the Clerk of the Circuit Court of Cook County
Richard J. Daley Center, Room 1001
50 West Washington Street
Chicago, Illinois 60602
kasmeltzer@cookcountycourt.com
Counsel for Defendant

/s/ Brian A. Sher
Brian A. Sher