UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>        Plaintiff,<br><br>vs.<br><br>Dorothy Brown, in her official capacity as the Clerk of the Circuit Court of Cook County,<br><br>        Defendant. | 17 C 7933<br><br>Honorable Judge<br>Matthew F. Kennelly |

**THE CIRCUIT CLERK'S RESPONSE TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendant Dorothy Brown, in her official capacity as the Clerk of the Circuit Court of Cook County (the "Circuit Clerk"), by her attorney, KIMBERLY M. FOXX, State's Attorney of Cook County, and through their attorneys, JAMES HANLON, JR., PAUL A. CASTIGLIONE and OSCAR KPOPTA, submits the following response to the motion for preliminary injunction that plaintiff Courthouse News Service ("CNS" or "Plaintiff") has filed.

**INTRODUCTION**

CNS seeks a mandatory[1] injunction against the Circuit Clerk directing her to provide immediate it with immediate access to complaints submitted electronically to the Circuit Clerk's office but not yet accepted for filing. No law imposes a duty upon the Circuit Clerk to provide such access to CNS or any other member of the media. CNS argues that the First Amendment

---

[1] The Seventh Circuit has recognized that "[b]ecause a mandatory injunction requires the court to command the defendant to take a particular action, 'mandatory preliminary writs are ordinarily cautiously viewed and sparingly issued.'" *Graham v. Medical Mut.*, 130 F.3d 293, 295 (7th Cir. 1997), *citing Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978).

requires such access. It does not. *See Courthouse News Serv. v. Yamasaki*, 2017 U.S. Dist. LEXIS 132923, *10-*11 (C.D. Cal. August 7, 2017) (finding that the plaintiff is not likely to succeed on the merits of its claim that the media has a right under the First Amendment of immediate access to electronically filed complaints).

As CNS has no First Amendment right to immediate access to electronically submitted complaints before they are accepted for filing, this Honorable Court should deny CNS' request for a preliminary mandatory injunction.

## STATEMENT OF FACTS

Plaintiff has attached two declarations to its motion for preliminary injunction. The declaration of William Girdner, Dkt. # 7-2, barely touches upon the operation of the Circuit Clerk's office and does not discuss the Circuit Clerk's practices and procedures for complying with the requirements of General Administrative Order 2014-12 dated June 13, 2016 from the Circuit Court of Cook County ("Order 2014-12")[2] and Electronic Filing Standards and Principles from the Illinois Supreme Court amended September 16, 2014 ("Electronic Filing Standards and Principles").[3]

CNS' second declaration is from Adam Angione. (Dkt. # 7-4.) In this declaration, Angione states that CNS has analyzed 2,414 complaints that were submitted electronically from June 1, 2017 to September 30, 2017 and that 86% of those complaints were available either the day they were submitted or the next day. (Dkt. # 7-5, page 33 of 152.) Of the remaining 14%, many of the submitted complaints were filed the next *business* day. CNS, for example, lists 154 complaints electronically filed between June 2, 2017 and October 2, 2017 as posted three days later. (Dkt. # 7-5, pages 33 through 130 of 152.) But this is very misleading. Every one of those

---

[2] A copy of Order 2014-12 is attached as Exhibit B.
[3] A copy of the Electronic Filing Standards and Principles is attached as Exhibit C.

131 complaints was filed on a Friday and posted *one business* day later on the following Monday or in the case of Labor day, the following Tuesday.[4]

CMS admits that 2,063 electronically submitted complaints were posted on the same day or the next day within the June 2, 2017 to September 30, 2017 time period. In addition, 131 complaints were filed within one business day after electronic submission. (Dkt. # 7-5, pages 33 through 130 of 152.)[5] Thus, of 2,414 complaints submitted electronically within the June 2, 2017 to September 30, 2017 time period, 2194 (or 90.9%) were filed within one business day after submission. 2,287 (or 94.7%) were filed within two business days after submission. 2,337 (or 96.8%) were filed within three business days after submission. It is undisputed that the vast majority of electronically submitted complaints are made public, and viewable, within twenty four business hours of filing. *See* Declaration of Kelly Smeltzer, General Counsel of the Circuit Clerk's office, a copy of which is attached as Exhibit A, at ¶7.

In this regard, the Circuit Clerk's office provides for electronic filing of pleadings in the Chancery, Child Support, Civil, Domestic Relations, Law and Probate Divisions of the Circuit

---

[4] In this regard, 9 complaints were submitted on 6-2-17 and accepted on 6-5-17; 16 were submitted on 6-9-17 and accepted on 6-12-17; 7 were submitted on 6-16-17 and accepted on 6-19-17; 11 were submitted on 6-23-17 and accepted on 6-26-17; 3 were submitted on 6-30-17 and accepted on 7-3-17; 6 were submitted on 7-7-17 and accepted on 7-10-17; 4 were submitted on 7-14-17 and accepted on 7-17-17; 3 were submitted on 7-21-17 and accepted on 7-24-17; 14 were submitted on 7-28-17 and accepted on 7-31-17; 3 were submitted on 8-4-17 and accepted on 8-7-17; 17 were submitted on 8-11-17 and accepted on 8-14-17; 4 were submitted on 8-18-17 and accepted on 8-21-17; 13 were submitted on 8-25-17 and accepted on 8-28-17; 3 were submitted on 9-1-17 and accepted on Tuesday, 9-5-17; 8 were submitted on 9-8-17 and accepted on 9-11-17; 14 were submitted on 9-15-17 and accepted on 9-18-17; 15 were submitted on 9-22-17 and accepted on 9-25-17 and 5 were submitted on 9-29-17 and accepted on 10-2-17.

[5] 93 complaints were filed within two business days after electronic submission. (*Id.*) 50 complaints were filed within three business days after electronic submission. (*Id.*) 12 complaints were filed within four business days after electronic submission. (*Id.*) 7 complaints were filed within five business days after electronic submission. (*Id.*) 36 complaints were filed within six business days after electronic submission. (*Id.*) And 18 complaints were filed within seven business days after electronic submission. (*Id.*)

Court of Cook County. *Id*. at ¶3. As of 2016, more than 300,000 e-filings had been processed, more than 50,000 e-filed motions had been spindled, and e-filing was available 24 hours a day and 7 days a week to more than 30,000 registered users. *Id*. at ¶5. During its business hours from 8:30 a.m. through 4:30 p.m., the Circuit Clerk's office reviews electronically submitted complaints as promptly as possible to ensure compliance with Order 2014-12 and the Electronic Filing Standards and Principles. *Id*. at ¶9.[6]

In processing electronically submitted complaints in accordance with Order 2014-12 and the Electronic Filing Standards and Principles, the Circuit Clerk's office does not violate the First Amendment. For the reasons set forth below, Plaintiff's motion for a preliminary injunction should be denied.

**ARGUMENT**

Under Illinois law, a complaint is not "filed" until the Circuit Clerk determines that it complies with the filing requirements set forth in Order 2014-12 and the Illinois Supreme Court's Electronic Filing Standards and Principles. CNS, however, argues that complaints are "'filed' with the [Circuit] Clerk *when they are received*." (Dkt. #7 at page 9 of 17, emphasis in the original). That position cannot be squared with wither Order 2014-12 or the Electronic Filing Standards and Principles.

Illinois law, to be sure, requires the Circuit Clerk to review electronically submitted complaints. In this regard, Order 2014-12 specifically states that "any document submitted electronically shall be considered filed with the [Circuit] Clerk's Office if not rejected by the

---

[6] The Circuit Clerk's office ensures that a majority of new civil complaints are viewable within approximately 24 business hours of submission. *Id*. at ¶11. The exception is when a case is received after 4:30 pm on a Friday, and over the weekend, especially a long holiday weekend. For instance, if a case is received on Friday after 4:30 pm, 4 it is accessible on Monday, or the next court business day. *Id*.

4

[Circuit] Clerk's Office." Exhibit B, ¶3(c). Similarly, the Electronic Filing Standards and Principles states that "[a]ny electronic document or record submitted to the clerk of the court for filing shall be deemed filed if not rejected by the clerk." Exhibit C, ¶3.

In Illinois, the rules of statutory construction apply to the interpretation of Illinois Supreme Court Rules. *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998). The goal is "to ascertain and give effect to the intention of the drafters of the rule." *Id*., citing *Croissant v. Joliet Park Dist*., 141 Ill. 2d 449, 455 (1990). As with statutes, the language of the rule is the "most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning." *Rennick*, 181 Ill. 2d at 405.

Applying those principles here to the Electronic Filing Standards and Principles and Order 2014-12, complaints that are electronically submitted to the Circuit Clerk are not actually "filed" until the Circuit Clerk's office determines that they do not improperly include excluded documents. Order 2014-12 sets forth thirteen categories of excluded documents, including documents containing confidential information and documents containing personal identity information. *See* Exhibit B, ¶2(c). The Circuit Clerk needs time to determine whether newly submitted complaints have attachments that are prohibited in Order 2014-12. The First Amendment does not require immediate posting of complaints before the Circuit Clerk's office has finished its review to determine compliance with Order 2014-12. Consequently, and for the reasons set forth below, CNS' motion for a preliminary injunction must be denied.

I.  **CNS FAILS TO SATISFY ANY OF THE FACTORS REQUIRED FOR THE PRELIMINARY, MANDATORY RELIEF THAT IT SEEKS.**

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v.*

5

*Armstrong*, 520 U.S. 968, 972 (1997), *citing* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2nd ed. 1995) (emphasis added).

Here, CNS must show: (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *See Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008). CNS cannot satisfy a single factor, let alone all four. And this is particularly true given the heightened standard that applies here because CNS is seeking a preliminary mandatory injunction. *See Graham*, 130 F.3d at 295.

CNS, therefore, is not likely to succeed on the merits of its First Amendment claim for "immediate access."

## I. CNS Cannot Succeed On The Merits.

As discussed below, CNS is not likely to succeed on the merits of its First Amendment claim for several reasons.

One reason is that the *Younger*[7] abstention doctrine bars the exercise of subject matter jurisdiction over a First Amendment challenge to pending circuit court order which, in effect, is exactly what Plaintiff's complaint is.

### A. *Younger* Abstention Bars The Exercise Of Subject Matter Jurisdiction Over What Is Essentially A Challenge To Order 2014-12.

Pursuant to ¶¶2(c) and 3 of Order 2014-12, the Circuit Clerk is implementing the State court's policy on electronic filing: *i.e.*, reviewing electronically submitted complaints before determining whether to reject or accept such complaints as properly filed. Plaintiff has asked this Court to preliminarily and permanently enjoin the Circuit Clerk from following that order. The Hon. Timothy Evans, the Chief Judge of the Circuit Court of Cook County, issued Order

---

[7] *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971).

2014-12. It is a pending standing order in the Circuit Court of Cook County. The *Younger* abstention doctrine prohibits Plaintiff from asking this Court to enjoin the operation of that order.

It is well established that *Younger* applies to both criminal and civil proceedings. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S. Ct. 1519, 1526 (1987). *Younger* applies where: (1) the state judicial proceeding is ongoing when the complaint is filed, (2) the state proceeding implicates an important state interest; and (3) the state proceeding provides an adequate opportunity to raise constitutional challenges. *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996). The instant case satisfies all three *Younger* elements. Order 2014-12 is an ongoing, standing order. This order implicates an important State interest: the rules for filing complaints and the operation of its court system. State court provides an adequate remedy as it has concurrent jurisdiction over Section 1983 actions. *Martinez v. California*, 444 U.S. 277, 283, n. 7 (1980).

If Plaintiff wishes to enjoin the operation of Order 2014-12 which it claims is causing a delay in violation of the First Amendment, then Plaintiff should bring that claim in State court. *Younger* precludes asserting such a claim in federal court. For that reason alone, Plaintiff is not likely to succeed on the merits of its case.[8]

B.   **The Circuit Clerk Is Not The Proper Party Defendant In This Case.**

Plaintiff has filed a First Amendment claim against the Circuit Clerk, in her official capacity, for not providing CNS with immediate access to complaints that are submitted electronically. (Dkt. #1, ¶¶48-52.) Indeed, Plaintiff alleges that:

---

[8]   *Courthouse News Serv. v. Planet* ("*Planet I*"), 750 F.3d 776 (9th Cir. 2014), a case that CNS cites (CNS' Mem. at 12), does not change impact the *Younger* analysis. While the Ninth Circuit in Planet I considered claims of *Pullman* and *O'Shea* abstention, it did not address the issue here: a claim of *Younger* abstention based upon CNS' request for injunctive relief from a federal court against a State official acting pursuant to a pending State court standing order.

7

> There is no compelling or overriding interest sufficient to justify Defendant's actions resulting in the denial of timely and contemporaneous access to newly e-filed complaints.

(Dkt. #1, Complaint, ¶51.)  Once again, Plaintiff overlooks both Order 2014-12 and the Electronic Filing Standards and Principles.

Under Illinois law, Illinois Supreme Court rules are presumed to be constitutional. *See Campuzano v. Peritz*, 376 Ill. App. 3d 485, 490 (1st Dist. 2007).  Both Order 2014-12 and the Electronic Filing Standards and Principles are presumed to be constitutional and not violate the First Amendment.

Of course, CNS -- or any other party -- is free to challenge the constitutionality of Order 2014-12 and the Electronic Filing Standards and Principles.  CNS has not done that but rather has alleged that the Circuit Clerk's office violates the First Amendment because it reviews electronically submitted complaints before posting them as filed.  CNS' actual complaint is with the filing requirements of Order 2014-12 and the Electronic Filing Standards and Principles and not with the Circuit Clerk's compliance with those requirements.

In essence, CMS has sued the Circuit Clerk for following the Illinois court system's policy to review electronically submitted complaints prior to posting them, to ensure that excluded documents are not filed. But under *Los Angeles County v. Humphries*, 562 U.S. 29 (2010), Plaintiff cannot bring a *Monell* custom, policy or practice claim against the Circuit Clerk because the Illinois courts -- and not the Circuit Clerk -- implemented this policy.

That is the basic problem here. If Plaintiff believes that the reviewing requirements set forth in ¶2(c) of Order 2014-12 and its attendant delays in posting electronically filed complaints violate the First Amendment, then Plaintiff should challenge that order in State court.  Plaintiff

has not done so. The Circuit Clerk is not the proper party for Plaintiff's First Amendment challenge. For this reason, Plaintiffs is not likely to succeed on the merits of its claim.

### C. The First Amendment Does Not Confer A Right To Immediate Access To Electronically Submitted Complaints.

The most recent case to consider whether the First Amendment confers an immediate right of access to electronically submitted complaints is the decision in *Courthouse News Serv. v. Yamasaki*, 2017 U.S. Dist. LEXIS 132923 (C.D. Cal. August 7, 2017). *Yamasaki* rejected CNS' First Amendment claim to such immediate access.

In *Yamasaki*, as in the present case, CNS argued that it was entitled to immediate access to complaints submitted electronically before the Clerk of the Court in Orange County, California had an opportunity to review the filed submissions to ensure that they complied with California law. The record in *Yamasaki* shows that 89.2% of the complaints electronically submitted were available for review within one business day. 96.5% were available for review within two business days and 98.5% were available for review within three business days. The district court noted that these "minor delays . . . simply do not constitute a First Amendment violation." *Yamasaki*, 2017 U.S. Dist. LEXIS 132923 at *10. *Yamasaki* is on point and dispositive here.

The percentage of complaints made available within one, two and three business days in *Yamasaki* and the Circuit Clerk's office here are virtually identical: 89.2%, 96.5% and 98.5% respectively in *Yamasaki* and 90.9%, 94.7% and 96.8% respectively in the instant case. The Circuit Clerk submits that *Yamasaki* is persuasive authority that this Court should follow.

In marked contrast to *Yamasaki*, the cases that CNS relies upon involve either: (1) affirmative conduct that entirely denied access to proceedings or records, or (2) significant delays in providing access resulting from factors other than mere lack of staff. Neither of these

9

circumstances exists here. In the first of these categories are cases involving exclusion of the public from a trial or permanent sealing of court records. Nearly all CNS's cases fall into this category.[9] These cases address orders "that *all* documents filed in the case be automatically sealed," *see Associated Press v. U.S. Dist. Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) (CNS' Mem. at 11, n. 7), or situations in which "the district court allowed the entire litigation—from filing to judgment—to occur behind closed doors, keeping all documents filed in the case under seal, not even reflected on the public docket." *Doe v. Pub. Citizen*, 749 F.3d 246, 252 (4th Cir. 2014) (CNS' Mem. at 11, n. 7).

In other cases, the courts considered requests to keep a complaint or other record permanently under seal, with the public being denied access entirely. *See, e.g.*, *Press-Enterprise Co. v. Superior Court*, 478 US 1, 8-9 (1986) (*Press-Enterprise II*) (reviewing an order sealing a criminal preliminary hearing transcript). (CNS' Mem. at 9.) These cases are inapposite. The Circuit Clerk's office is not sealing records or otherwise proposing to deny access to court records that the law demands be public. It is merely checking before publicly releasing a complaint that the law does not require that the complaint be kept confidential. And it is promptly making publicly available all complaints that the law does not require be kept confidential, with 90.9% of the complaints becoming public within 8 business hours.

---

[9] *See, e.g., Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 136 (2d Cir. 2016) (affirming denial of request to permanently seal the entire case file) (CNS' Mem. at 2, 9); *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 233 (2000) (recognizing that whether it proceeded under a common law or First Amendment analysis, "trial court abused its discretion by ordering the counterclaim to be filed under seal") (CNS' Mem. at 9); *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 120077 (N.D. Cal. April 22, 2008) (denying a motion to seal a complaint) (CNS' Mem. at 9); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 117 (2nd Cir. 2006) (trial court ordered summary judgment papers be sealed and refused to consider request to unseal for the entire pendency of the summary judgment motion, lasting more than 18 months) (CNS' Mem. at 11, n. 7); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 895 (7th Cir. 1994) (trial court sealed the entire case file for the duration of the case and then denied request to unseal) (CNS' Mem. at 1, 8, 11, 12 and 13).

The second category of cases on which CNS relies are cases finding that the court at issue adopted procedures that caused undue delays in releasing newly filed complaints. CNS relies mostly heavily on *Courthouse News Serv. v. Planet* ("*Planet III*"), 2016 U.S. Dist. LEXIS 105197 (C.D. Cal. May 26, 2016) (CNS' Mem. at 10-11). CNS' reliance on *Planet III* is misplaced. Here, the Circuit Clerk's office reviews newly e-filed complaints promptly, with 90.9% of complaints publicly posted within eight business hours of filing. In contrast, in Planet III, 50% or more of complaints in some time periods were not publicly available until two or more days after filing. *Planet III*, 2016 U.S. Dist. LEXIS 105197 at *18-*19.[10]

*Courthouse News Serv. v. Jackson*, 2009 U.S. Dist. LEXIS 62300 (S.D. Tex. July 20, 2009) and *Courthouse News Serv. v. Tingling*, 2016 U.S. Dist. LEXIS 185185 (S.D.N.Y. Dec. 16, 2016) (CNS' Mem. at 11) are similarly inapposite. In *Jackson*, the court found that the Harris County District Court's "indexing and verification" process resulted in complaints becoming publicly available only within 24 to 72 business hours after filing. *Jackson*, 2009 U.S. Dist. LEXIS 62300 at *4-*5. Here, the Circuit Clerk's office makes 90.8% of electronic complaints available within just *eight* business hours of filing. The decision in *Tingling* provides no guidance, as neither the decision itself nor the court's comments in the transcript that CNS

---

[10] The Ninth Circuit's rulings in *Planet* also do not support CNS's motion. The Ninth Circuit's first opinion in *Planet I* addressed *Pullman* and *O'Shea* abstention and not the merits of the underlying claim. The Ninth Circuit, however, did not rule that CNS's claim of injury was valid. In its second opinion, the Ninth Circuit reversed the dismissal of CNS's claim. But it again did not resolve the underlying claim, holding only that the district court "erred by evaluating the question of same-day access as a purely legal question" and by "ruling as a matter of law that filed complaints which have not yet been the subject of hearing are outside the scope of the First Amendment right of access." *Courthouse News Serv. v. Planet* ("*Planet II*"), 614 F. App'x 912, 914-15 (9th Cir. 2015). The court did not prescribe any timeframe in which complaints must be made public, let alone rule that they must be made available on the day of filing or that courts are not permitted to check for confidentiality before publicly posting a complaint.

11

attached to its memorandum, *see* Dkt. #7-4, Ex. 2 at 46-53, explain the precise nature of the delays in that case.

The only case that CNS cites that is wholly on point in *Yamasaki* (CNS' Mem. at 12, n.8). This Court should follow *Yamasaki* and hold that CNS is not likely to succeed on the merits of its First Amendment claim.

> D. **To The Extent Any Justification is Required for the Asserted "Delay," It Exists Here.**

CNS contends that every minute or hour of delay beyond that moment must be justified as serving a "higher" or "significant" governmental interest in a way that cannot be achieved by more narrowly tailored means. (CNS' Mem. at 12, 13.)

No legal authority, however, holds that the kind of "delay" at issue here -- where 90.8% of complaints are made available within 8 business hours of filing -- requires any justification. If CNS's theory were correct, even same-day access would not be enough. That is certainly not the law. The Constitution does mandate, and federal courts should not be in the business of, policing every minute of a state court's activity to ensure that no time is wasted before getting a complaint out of the door.

Even if a justification were required, it exists here. As previously discussed, the Circuit Clerk has a duty to comply with and follow the mandates of both the Illinois Supreme Court and the Chief Judge of the Circuit Court of Cook County. Both have ruled that electronically submitted documents shall be deemed filed if not rejected by the circuit clerk. Exhibit B, ¶3(c); Exhibit C, ¶3. And the Chief Judge has issued an order directing the Circuit Clerk to make sure that such submissions do not include items from thirteen different categories of documents. *See* Exhibit B, ¶2(c). Those rules and order justify any delays that occur when the Circuit Clerk processes the filing of electronically submitted complaints.

**II.     CNS Cannot Demonstrate Any "Real And Concrete" Harm, Much Less Irreparable Harm.**

CNS's motion should also be denied because CNS cannot establish the other requirements for a preliminary injunction. To obtain the mandatory injunctive relief it seeks, CNS must demonstrate irreparable harm. *Graham*, 130 F.3d at 295. CNS cannot meet that burden.

**A.     CNS Cannot Avail Itself Of Any Presumed Harm Derived Under Inapposite Freedom Of Expression Cases.**

CNS relies on inapposite authorities for the unsupportable proposition that *any* delay in access to newly filed unlimited civil complaint constitutes irreparable harm. CNS's cases, however, involve harm caused by a restraint on the freedom of *expression or speech*, not restraint on access to court records. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 357 (1976) (freedom of belief and association) and *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (freedom of speech, expressive association and free exercise of religion).

An important distinction exists between freedom of expression cases and cases involving access to information. While both are *rooted* in First Amendment principles, they have developed along distinctly different lines. *See, e.g., Houchins v. KQED, Inc.*, 438 U.S. 1, 9-10 (1978) (distinguishing right to access information cases from First Amendment cases where courts are "concerned with the freedom of the media to communicate information once it is obtained"). While CNS attempts to conflate the two concepts, *Houchins* shows that they are *not* automatically linked:

> There are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow. For example, the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, but that does not make entry into the White House a First Amendment

13

right. The right to speak and publish does not carry with it the unrestrained right to gather information.

*Id.* at 12 (internal quotation marks omitted)

While implementing the requirements of Order 2014-12 and the Electronic Filing Standards and Principles, the Circuit Clerk posts 90.8% of the electronically submitted complaints within eight business hours.

The Circuit Clerk has not violated CNS' rights under the First Amendment and CNS cannot show any actual or irreparable harm.

**III.    CNS Has Not Shown That The Balance Of Equities or the Public Interest Supports A Preliminary Injunction.**

As previously discussed, the percentage of complaints made available within one, two and three business days in *Yamasaki* and the Circuit Clerk's office here are virtually identical: 89.2%, 96.5% and 98.5% respectively in *Yamasaki* and 90.9%, 94.7% and 96.8% respectively in the instant case. The district court in *Yamasaki* held that CNS was not likely to succeed on the merits of their First Amendment claim.

*Yamasaki* further noted that the Orange County clerk would have to hire additional staff to comply with California law *and* provide immediate access to all complaints when submitted:

> If, as CNS would have it, these newly filed complaints were made immediately available, significant privacy interests would be at risk. Of course, if OCSC hired more staff to go through the massive case-load more quickly, processing could occur faster with due concern for privacy interests. But the only way more staff could be hired is if more money was taken from scrimping taxpayers for the budget-strapped OCSC. Thus, tax payers would be pressed into promoting CNS's profits.

*Id*. at *10-*11. In light of the increased funding that would be needed for the Circuit Clerk to comply with Order 2014-12 and the Electronic Filing Standards and Principles *and* provide immediate access to electronically filed complaints, CNS has not demonstrated that the

balancing of equities favors the injunctive relief that it seeks or that the public interest supports a preliminary injunction.

## IV.    If This Court Were To Issue A Preliminary Injunction, A Bond Should Be Issued.

Rule 65(c) of the Federal Rules of Civil Procedure provides that a "court may issue a preliminary injunction or a temporary restraining order *only if* the movant gives security in an amount that the court considers proper."  FEDERAL RULE OF CIVIL PROCEDURE 65(c).  As the Seventh Circuit has observed, "bonds must reflect full costs." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000).  In *Mead Johnson*, the Seventh Circuit stated:

> An error in setting the bond too high thus is not serious . . . [but] an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond

*Id*.  If the Court were to issue such an injunction, the Circuit Clerk would be compelled to increase its staff resources at considerable expense. Thus, in that event, a sizeable bond should be required pursuant to FEDERAL RULE OF CIVIL PROCEDURE 65(c).

## CONCLUSION

CNS's Motion for Preliminary Injunction should be denied.

                                                Respectfully Submitted,

                                                KIMBERLY M. FOXX
                                                State's Attorney of Cook County

                                             By: /s/ Paul A. Castiglione
                                                  Paul A. Castiglione
                                                  ARDC#6197136
                                                  500 Richard J. Daley Center
                                                  Chicago, Illinois 60602
                                                  (312) 603-2350

James E. Hanlon, Jr.
Paul A. Castiglione
Oscar Kpopta
Assistant State's Attorneys

*Of counsel*