**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>Plaintiff,<br><br>v.<br><br>DOROTHY BROWN, in her official capacity as the Clerk of the Circuit Court of Cook County, Illinois,<br><br>Defendant. | Case No: 17-cv-7933<br><br>Honorable Matthew F. Kennelly |

**PLAINTIFF COURTHOUSE NEWS SERVICE'S REPLY**
**IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Brian A. Sher, ARDC 6196964
Donald A. Cole, ARDC 6299318
BRYAN CAVE LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: (312) 602-5000
Fax: (312) 602-5050

*Attorneys for Plaintiff Courthouse News Service*

## INTRODUCTION

Defendant's response narrows the factual and legal issues before this Court in several important respects. Defendant does not dispute there is a First Amendment right of access to complaints as a general matter; does not dispute the press had and continues to have contemporaneous access to paper-filed complaints upon receipt by the Clerk's Office; and does not dispute (although she discounts as immaterial) the delays in access to e-filed complaints caused by her practice of withholding those complaints until after processing, which she herself says may result in delays of up to "24 business hours" – *i.e.*, ***three court days***. And because she cannot satisfy the "formidable" burden to overcome the presumptive First Amendment access right that attaches as soon as complaints are received for filing by her office – which requires her to, at the very least, explain why the methods for providing contemporaneous access to e-filed complaints many other courts use, both state and federal, would not also work at the Circuit Court – she does not even try.

Instead, Defendant relies on an outlier case in which a California district court found delays of 8 "business hours" (*i.e.*, one court day) did not implicate the First Amendment. But as discussed below, that argument is contrary to three other similar district court decisions that reached the opposite result, as well as settled precedent of the Seventh Circuit and its sister circuits. Defendant also persists in insisting, as she did in pre-litigation communications, that new complaints received by her office – which get a "file" stamp reflecting the date and time of receipt and are treated as "filed" on receipt for statute of limitations purposes – are not actually filed until her staff gets around to processing them and pronounces them "officially filed," a concept not found in any of the rules she relies on. Here too, Defendant's argument is contrary to case law, and her belated argument about confidential documents – which she did not raise in her prior communications with CNS – is contradicted by the very rules she relies on.

Nor are her other arguments well taken. *Younger* abstention does not apply, and Defendant's claim that she is not the right defendant is wrong because it is Defendant's own policies – and not Circuit or Supreme Court rules – that are causing the First Amendment harms here. And her assertion that there is no irreparable injury because this is not a "freedom of expression case" ignores that the purpose of the First Amendment right of access is "to ensure that this constitutionally protected 'discussion of government affairs' is an informed one." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604-05 (1982).

Moreover, the relief CNS seeks is not as Defendant portrays it. CNS seeks to "restrain[] Defendant . . . from denying CNS's constitutional right of contemporaneous access" to e-filed complaints and "requiring her to provide access to new complaints contemporaneously with their receipt." (Dkt. No. 6). That is not a request for "immediate access" in the literal sense, although "immediate" access is exactly what "[t]he Seventh Circuit dictates," *U.S. v. Berger*, 990 F. Supp. 1054 (C.D. Ill. 1998) (citing *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994)), and the relief CNS seeks is no more than what it has been granted in other cases.[1] And it is not a mandatory injunction where, as here, it seeks only to preserve the *status quo*.[2]

---

[1] In *CNS v. Tingling*, CNS sought a preliminary injunction prohibiting a New York clerk "from denying access to newly-filed civil complaints until after clerical processing and to require Defendant to provide Plaintiff access to those documents in a timely manner upon receipt." 2016 WL 8505086, at *1 (Dec. 16, 2016). In *CNS v. Planet*, CNS sought "preliminary and permanent injunctive relief 'prohibiting' [a California state court clerk] from 'continuing his policies resulting in delayed access to new unlimited jurisdiction civil complaints and denying [CNS] timely access to new civil unlimited jurisdiction complaints on the same day they are filed.'" 750 F.3d 776, 790-91 (9th Cir. 2014) ("*Planet I*"). The injunctive relief sought in *CNS v. Jackson* was similar. *See* 2009 WL 2163609, at *5 (S.D. Tex. July 20, 2009). In all three cases, district courts ordered injunctive relief that required timely access while leaving the details on how to provide it to the clerks, and in all three cases, that injunctive relief was effective. *See* Reply Declaration of William Girdner ("Girdner Reply Dec."), ¶¶ 9-14, a true and correct copy of which is attached hereto as **Exhibit A**. CNS seeks similar relief here.

[2] Injunctions that seek to preserve the *status quo* are prohibitory, not mandatory. *Preston v. Bd. of Trustees of Chicago State Univ.*, 120 F. Supp. 3d 801, 804 (N.D. Ill. 2015). The *status quo*

## ARGUMENT

### A. The Circuit And Supreme Court Rules Are Not As Defendant Portrays, And Her *Younger* And "Wrong Defendant" Defenses Built On Those Rules Fail Too

Defendant argues that "[u]nder Illinois law, a complaint is not 'filed' until the Circuit Clerk determines that it complies with the requirements set forth in Order 2014-[02] and the [Standards and Principles]," *i.e.*, "accepts" it. Response ("Resp."), p. 4. Defendant is wrong; a complaint is filed as of the date it is received:

> A document is legally filed when it is delivered to the proper officer and receives proper endorsement; the person filing has the duty of delivery of the paper, and the officer has the duty of making the appropriate endorsement on the paper. Delivery alone has been held to constitute filing since the person filing has no control over the officer who receives documents. Subsequent ministerial tasks of the clerk evidence the filing of a document but are not essential to its perfection.

*In re Estate of Davison*, 430 N.E.2d 222, 223 (Ill. App. Ct. 1981) (citations omitted). There is also this case:

> Regarding the filing of a complaint, we now make explicit what is implicit in [*Wilkins v. Dellenback*, 500 N.E.2d 692 (Ill. App. Ct. 1986)], the filing date of a complaint is the date it is received by the circuit clerk. . . . The filing of a complaint implicates the statute of limitations; a cause of action not commenced within the applicable limitations period is barred. Defendants have a right to rely on the certainty the statute provides. . . .

*Kelly v. Mazzie*, 565 N.E.2d 719, 721 (Ill. App. Ct. 1990).

As CNS explained in its opening Memorandum ("Mem."), neither GAO 2014-02 nor the Standards and Principles say "a complaint is not filed until" after the Clerk's Office confirms it satisfies the requirements of GAO 2014-02 and the Standards and Principles. Mem., pp. 10-11. Undeterred, Defendant now claims the rules allow her to withhold access to protect against

---

that CNS seeks to preserve is the same contemporaneous access that existed and still exists for paper complaints. CNS seeks an order prohibiting Defendant from denying contemporaneous access, which she does by delaying access until clerks complete their administrative tasks associated with complaint intake, which would "clearly prohibit[], rather than compel[], government action." *Cf. Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006).

public disclosure of "confidential" information.[3] Resp., p. 10. But this argument – clearly borrowed from *CNS v. Yamasaki* – is contradicted by the very rules she relies on and is the functional equivalent of the notion that the right of access does not arise until after processing, which was rejected in *CNS v. Planet*, 2016 WL 4157210 (C.D. Cal. May 26, 2016) ("*Planet* Order") and *CNS v. Tingling*, 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2017) ("*Tingling* Order").[4]

Paragraph 2(c) of GAO 2014-02 sets forth thirteen categories of documents that ***may not be electronically filed***. The GAO does not speak to the Clerk's obligation "to make sure" that these categories of documents are not electronically filed. In fact, paragraph 7 specifically provides that "the filing party is responsible to ensure that court documents filed electronically do not disclose [confidential information]" and "the Clerk's Office is not responsible for the content of filed documents and has no obligation to review, redact, or screen any expunged, sealed or impounded information." GAO 2014-02 ¶ 7(a). Paragraphs 11-12 of the Standards and Principles say the same. The Clerk explicitly acknowledged this when she was recently quoted in the *Chicago Tribune*, stating, "The responsibility for redacting these sensitive details falls on the attorneys." A copy of that Nov, 25, 2017 Article is attached hereto as **Exhibit B**.

The Standards and Principles and GAO 2014-02 do not say anything about "official filing." Moreover, GAO 2014-02 only provides four limited instances when the Clerk's Office may reject documents, all of which are clerical in nature[5] and do not obligate the Clerk to review

---

[3] Notably, Defendant never raised "confidentiality" as the basis for her denial of access during the parties' pre-litigation discussions. *See, e.g.,* Ex. 11 to Girdner Dec.; Ex. B to Mem.

[4] As in CNS's moving papers, references to the *Tingling* Order are to the ECF version of the transcript attached as Exhibit 2 to the Girdner Declaration.

[5] Indeed, Illinois courts have held that the failure to pay the filing fee does not deprive the circuit court of jurisdiction over the matter. *See Hanks v. Floyd*, 367 N.E.2d 483, 484 (Ill. App. Ct. 1977) (citing *Elles v. Ind. Comm.*, 30 N.E.2d 615 (Ill. 1940)).

the content of the filing. GAO 2014-02, ¶ 5(f); *accord* Standards and Principles ¶ 9(f). This is consistent with Illinois Supreme Court Rule 138(e), which applies to all civil cases and states:

> Neither the court nor the clerk is required to review documents or exhibits for compliance with this rule. If the clerk becomes aware of any noncompliance, the clerk may call it to the court's attention. The court, however, shall not require the clerk to review documents or exhibits for compliance with this rule.

Defendant's mischaracterization of GAO 2014-02 and the Standards & Principles is also one reason (but not the only reason) why her arguments that *Younger* should bar this action and she is the wrong party sued also fail:

***Younger* Abstention –** *Younger* abstention "requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). But it is only appropriate "when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007); *accord Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Absent any ***pending*** proceeding in state tribunals . . . *Younger* abstention was clearly erroneous.") (emphasis in original).

As a preliminary matter, CNS is not seeking to "enjoin the operation of" GAO 2014-02, nor does it claim that GAO 2014-02 "is causing a delay in violation of the First Amendment," as Defendant claims on page 7 of her Response, although she contradicts herself on page 8 ("CNS has not done that"). As CNS's complaint makes perfectly clear, the problem is Defendant's policies, not the GAO. More importantly for *Younger* purposes, Defendant cannot point to any authority supporting her novel theory that the mere existence of GAO 2014-02 is an "ongoing

state proceeding" that requires CNS to pursue its claims in state court.[6] "The mere fact that a case could be heard in state court is insufficient to justify *Younger* abstention." *Vill. of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 783 (7th Cir. 2008); *accord Hoover v. Wagner*, 47 F.3d 845, 848 (7th Cir. 1995) ("nothing in *Younger* or [its progeny] suggests that persons claiming a violation of their federal rights have an obligation . . . to see whether there is some state court proceeding that they might join in order to present their federal claims there.").

**Brown Is Properly Sued –** Defendant's argument that CNS "cannot bring a *Monell* custom, policy or practice claim" against her "because the Illinois courts – and not the Circuit Clerk – implemented this policy," Resp., pp. 7-8, is a red herring. As an initial matter, a *Monell* defense is a "mere defense to liability," not immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 43 (1995). Further, liability under *Monell* "may apply if the unconstitutional act complained of is caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citation omitted).

Here, CNS's claim against Defendant was brought in her official capacity, which "is the same as a claim brought against the Clerk's Office." *Pope v. Clerk of the Circuit Court of Cook County*, 2011 WL 1004640, at *3 (N.D. Ill. Mar. 17, 2011) (citing *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 975 n.1 (7th Cir. 2000) (stating that "[a]n official capacity suit is the same as a suit against the entity of which the officer is an agent")). The Clerk's Office may

[6] The clerk in *Tingling* made a similar argument about state regulations he claimed supported his policy of withholding access until after administrative processing, which the court there rejected. *See Tingling* Order 43:20-25 ("I don't think the plaintiffs are asking me to declare the regulations unconstitutional. The regulations, constitutional or not, they are not asking me to touch. The only things that they are asking is, sure, go through your process, but you've got to allow access at an earlier point in time.").

be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Servs*, 436 U.S. 658, 694 (1978).

As discussed above, it is Defendant's own choices – and not Circuit or Supreme Court rules – that are resulting in the deprivations of First Amendment rights. Thus, Defendant is the proper party defendant. *See Milbrandt v. Brown*, 2016 WL 3387160, at *6 (N.D. Ill. June 20, 2016) (holding complaint "adequately alleged that a widespread unconstitutional custom existed, and that it was begun or continued with the knowledge and/or acquiescence of policymakers, including Defendant [Clerk] Brown").

### B. Defendant Cannot Rely On *Yamasaki* To Justify Access Delays Many Other Courts Have Said Are Unconstitutional, And The Delays Are Getting Worse

Defendant's next argument is that this Court should follow the recent district court decision in *CNS v. Yamasaki*, 2017 WL 3610481 (C.D. Cal. Aug. 7, 2017), *appeal docketed*, No. 17-56331 (9th Cir. Sept. 5, 2017), which held that delaying access to "almost half of the new unlimited complaints . . . anywhere from between one and nine days" did not raise a First Amendment problem because "the vast majority of complaints" were available "within 8 business hours," *i.e.*, one business day. *Id*. at *3.

*Yamasaki* is an outlier and was wrongly decided, as is explained extensively in the pending appeal. Every other court to have considered the question has found delays of even one business day – which translates into delays of three, four or five court days where there are intervening weekends and/or holidays[7] – violate the First Amendment right of access, which

[7] Defendant says CNS's description of the delays is "misleading," Resp., p. 2, because CNS counts weekends and holidays. But there is nothing misleading about this: these are additional delays during which "informed public discussion of ongoing judicial proceedings is "stifle[d]," *Planet I*, 750 F.3d at 787, and that the public and press actually experience, when access to a complaint is delayed by even one court day.

must be "timely" and "contemporaneous" unless the party seeking to withhold access (here, Defendant) can satisfy her burden of proof under a strict scrutiny analysis.

In *Planet*, a different judge from the same district found that denying access to new complaints received the last 90 minutes of the day "until the next day" – *i.e.*, for less than two business hours – violated the First Amendment right of timely access. *Planet* Order at *20. Defendant's reference to longer delays, Resp., p. 11, relates to a different part of the *Planet* Order that discussed the longer delays in access when CNS first filed its suit, but she fails to mention the court also ordered injunctive relief to address the shorter delays that still existed after the clerk's post-lawsuit change of access procedures.

In *Tingling*, a federal court in New York rejected the theory that "the next business day" is "immediate enough under the First Amendment" – even though the state court assured the court that "[i]f something comes in at 3:00 or 4:00 in the afternoon . . . it will get done at 9:30 or 10:00" the next day, a denial of access of at most three business hours – because "our public access cases and those in other circuits emphasize the importance of immediate access where a right of access is found." *Tingling* Order 59, 62, 74 (citing, *e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006)). Defendant tries to distinguish *Tingling* on the ground it did not "explain the precise nature of the delays in that case." Resp., pp. 11-12, but she is wrong. *See Tingling* Order 46, 50, 52.

As for *Jackson*, while that case involved slightly longer delays (24 to 72 business hours), Resp., p. 11, the Texas district court issued a preliminary injunction requiring the Houston court clerk to provide access to complaints – called "petitions" in Texas – "on the same day the petitions are filed." *Jackson*, 2009 WL 2163609, at *5.

In *Grove Fresh*, the Seventh Circuit applied strict scrutiny to delays in access to court records. 24 F.3d at 897. Other circuit courts have also applied strict scrutiny to delays in access of "24 hours," *U.S. v. Brooklier*, 685 F.2d 1162, 1170 (9th Cir. 1982); *accord Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) (strict scrutiny applied to "delay" defendant called "minimal, at times as little as a day," which nonetheless "delays access to news, and delay burdens the First Amendment") – because "[t]he effect . . . is a total restraint on the public's first amendment right of access even though the restraint is limited in time." *Associated Press v. District Court*, 705 F.2d 1143, 1147 (9th Cir. 1983) (delaying access for "48 hours"). Defendant does not address *Grove Fresh, Brooklier*, or *Pokaski*, and says *Associated Press* does not apply because that addressed orders "that *all* documents filed in the case be automatically sealed," Resp., p. 10, but Defendant's policies that are the subject of this action are not much different: she withholds "all" complaints, functionally sealing them, until she and her staff are ready to make them available for public view, which "impermissibly reverse[s] the 'presumption of openness'" required "'under our system of justice." *Associated Press*, 705 F.2d at 1144-46.

If that result is true in all of these other cases, it must also be true in the Seventh Circuit, which has repeatedly emphasized that where the right of access is found, it must be "immediate and contemporaneous." *Grove Fresh*, 24 F.3d at 897; *accord, e.g., In re Associated Press*, 162 F.3d 503, 506-07 (7th Cir. 1998); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1314 (7th Cir. 1984). The Seventh Circuit has also explained the reasons for this rule: "[t]he newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." *Grove Fresh*, 24 F.3d at 897. Therefore, "'[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment.'" *Id.* (quoting *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329

(1975) (Blackmun, Circuit Justice, in chambers)). Given the vast amount of information competing for its attention, especially true in today's digital world, it is only when new actions are still "current news that the public's attention can be commanded." *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 250 (7th Cir. 1975). Accordingly, new complaints that cannot be seen in a contemporaneous matter are less likely to be reported on, which means they are less likely to come to the attention of interested members of the public. The result is a less-informed citizenry. *Accord* Girdner Decl., ¶¶ 34-36; *see also* Girdner Reply Dec., ¶¶ 23-24.

As these cases show, delaying access for even eight "business hours" – a unit of time entirely within the control of a clerk, who may shorten them as she sees fit – implicates the First Amendment. But as Defendant notes repeatedly in her response and supporting declaration, she wants to delay access for up to "24 business hours," Resp., p. 4; Smeltzer Dec., ¶¶ 7, 11, which is the equivalent of ***three court days***. *See* Reply Declaration of Adam Angione ("Angione Reply Dec."), ¶ 6, a true and correct copy of which is attached hereto as **Exhibit C**; Girdner Reply Dec., ¶ 22. This is likely because the delays in access to e-filed complaints have gotten worse even after this lawsuit was filed. *See* Angione Reply Dec., ¶ 9; Ex. 1 to Angione Reply Dec.

### C. Defendant Does Not Even Try To Show How Her Policies Meet The Test Necessary To Overcome The Right Of Access

Once a constitutional right of access attaches to a particular category of judicial document, the "burden of persuasion" shifts to the "proponent of closure," *U.S. v. Peters*, 754 F.2d 753, 761 (7th Cir. 1985) – in this case, Defendant – to overcome the First Amendment right of access by demonstrating "that suppression 'is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Grove Fresh*, 24 F.3d at 895. Given the "difficulties inherent in quantifying the First Amendment interests at issue," the Court must be "firmly

convinced that disclosure is inappropriate before arriving at a decision limiting access." *Id.* at 897*; accord In re Cont'l Ill. Sec. Litig.*, 732 F.2d at 1313.

Defendant never acknowledges this burden of proof. Instead, she says she has a "duty to comply with and follow the mandates of" GAO 2014-02 and the Standards and Principles. Resp., p. 12. But as shown above, neither allow, let alone mandate, withholding access to complaints from the public during administrative review. And even if they could be read to allow withholding, that would not eliminate Defendant's burden. *See In re The N.Y. Times Co.*, 828 F.2d 110, 115 (2d Cir. 1987) ("Obviously, a statute cannot override a constitutional right.").[8]

Nor are Defendant's conclusory assertions about "confidential information and documents" sufficient to satisfy the "formidable task" of "[o]vercoming the presumption." *In re Associated Press*, 162 F.3d at 506.[9] Defendant must do more than invoke a "generic risk" and assert her policies are necessary to protect it. *Presley v. Georgia*, 558 U.S. 209, 215 (2010) ("merit" in argument that "generic risk of jurors overhearing prejudicial remarks, unsubstantiated by any specific threat or incident," did not establish "any overriding interest likely to be prejudiced" by access); *accord Press-Enterprise II,* 478 U.S. at 14-15 ("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the

---

[8] *See also Press-Enterprise Co. v. Superior Ct. of Cal. ("Press-Enterprise II")*, 478 U.S. 1, 13-14 (1986) (striking California statute that allowed closing of preliminary criminal hearings upon showing of reasonable probability of harm, rather than the more demanding test mandated by the First Amendment); *Globe Newspaper*, 457 U.S. at 606-08 (holding unconstitutional a Massachusetts state statute requiring trial courts to exclude the public from the courtroom in all instances of testimony of a minor victim of a sex crime).

[9] As to Defendant's concern about the public seeing complaints that are later rejected articulated in her pre-lawsuit communications, it is not even clear this would qualify as a "higher value," since complaints submitted to a court for filing are all documents the public has a right to see even if a tiny percentage are later rejected for ministerial reasons. *See Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (the "third party effects that justify the subsidy of the judicial system also justify making records . . . as open as possible. What happens in the halls of government is presumptively public business.").

defendant of [the right to a fair trial]."); *Peters*, 754 F.2d at 760 (closure order vacated where record "failed to identify with any specificity an 'overriding interest' which required closure to serve that interest's 'higher value'"). Defendant does not point to any specific facts to suggest that the protections for confidential document and information that already exist in the GAO and Standards and Principles – *i.e.*, requiring such documents to be filed in paper, and putting that responsibility on the filing party – are not effective. "[T]he constitutionally grounded presumption of openness simply is too strong to permit these certain burdens to remain in order to avoid harms that will occur only rarely, if at all." *Pokaski*, 868 F.2d at 509.

Defendant cannot avoid her burden by claiming contemporaneous access would require "increased funding." Resp., p. 14. CNS is not asking the Clerk to spend more money, reassign staff, or make any similar resource adjustment. *See* Girdner Reply Dec., ¶¶ 4-17. The problem is not the lack of resources. The problem is Defendant's insistence on denying access to new e-filed complaints until after they have been fully processed. Once this bar is lifted, the contemporaneous access to civil complaints that the press has traditionally had and still has in the paper environment, and had initially in the e-filing environment before Defendant instituted her process-first policy, will be reinstated. *See id.*

Defendant offers no reason why the solution other courts have adopted for providing contemporaneous access in their transition to e-filing would not work at her court, and it is evident that none exist, where, as here, courts in New York, Georgia, Connecticut, Utah, Alabama, Nevada, and now Fresno County, California – as well as the vast majority of federal district courts – provide access on receipt, having found alternative ways to address the concerns Defendant raises, which are of course hardly unique to her court. *See* Girdner Dec., ¶¶ 19-33; Girdner Reply Dec., ¶¶ 5-17, 20; Angione Reply Dec., ¶¶ 10-12. As such, Defendant's policies

are not narrowly tailored, and she has not met her burden of proof for this reason as well. *See Peters*, 754 F.2d at 761 ("Nor did defense counsel, who carried the burden of persuasion of closure, explain why other alternatives to closure were unavailable.").

**D. CNS's First Amendment Claim Is a Free Expression Claim, And All *Winter* Factors Favor Injunctive Relief**

Hoping to avoid settled law that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,'" *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)), Defendant argues it is inapplicable because, she says, this case does not implicate the right to free expression. Resp., p. 13. She is demonstrably wrong.

"The Supreme Court has repeatedly held that access to public proceedings and records is an indispensable predicate to free expression about the workings of government . . . the First Amendment protects the right of public access . . . because 'a major purpose of that Amendment was to protect the free discussion of governmental affairs.'" *Planet I*, 750 F.3d at 785 (citing *Richmond Newspapers v. Virginia*, 448 U.S. 555, 577 (1980) and quoting *Globe Newspaper*, 457 U.S. at 604). Defendant's reliance on *Houchins v. KQED*, 438 U.S. 1 (1978), decided two years ***before*** *Richmond*, is misplaced. In *Richmond Newspapers*, a majority of justices adopted the *Houchins* dissent's view that "'[an] official . . . policy of concealing . . . knowledge from the public by arbitrarily cutting off the flow of information at its source abridges the freedom of speech and of the press.'" 448 U.S. at 583 (Stevens, J., concurring) (quoting *Houchins*, 438 U.S. at 38 (Stevens, J., dissenting)); *accord Peters*, 754 F.2d at 758 (the "right to attend criminal trials . . . is implied from the First Amendment's 'core purpose' of assuring free public discussion") (citing *Richmond Newspapers*, 448 U.S. at 575).

As to the balance of harms and public interest, Defendant says they favor her because the delays in access here are "virtually identical" to those in *Yamasaki* and the injunctive relief CNS seeks would, she claims, require her to "hire additional staff." Resp., p. 14. But as explained above in Sections B and C, neither premise is true.[10]

Defendant cannot dispute that "the public cannot discuss the content of . . . civil complaints about which it has no information," which "deter[s] . . . informed public discussion of ongoing judicial proceedings." *Planet I*, 750 F.3d at 787-88; *see also* Girdner Dec. ¶¶ 34-39; Girdner Reply Dec. ¶¶ 23-24; Angione Reply Dec., ¶¶ 7-8 (Cook County delays deter reporting on new complaints). This is a "social interest," *GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419 (7th Cir. 2014), and the relief CNS seeks would inure not just to CNS, but the other members of the Chicago press corps, as well as to the public, who acquire information about their courts "chiefly through the print and electronic media." *Richmond Newspapers*, 448 U.S. at 573; *accord Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491 (1975) ("In a society in which each individual has but limited time and resources with which to observe at first hand the operations of the government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations."). Absent any showing by Defendant that she will be harmed by

[10] As to Defendant's urging this Court to set a "sizeable bond," CNS is not asking Defendant to process cases any more quickly, or to hire more staff. Simply requiring Defendant to cease her practice of delaying access to new complaints until full processing does not in and of itself cost a single penny; Defendant could provide contemporaneous access to complaints simply by allowing newly e-filed complaints to be seen on the computer terminals that already exist in the press room before, rather than after, administrative processing. *See* Girdner Reply Dec., ¶¶ 5-17, 21; Angione Reply Dec., ¶¶ 10-12. That is the same method many other e-filing courts use. Defendant has not offered any evidence to show that doing the same would involve anything more than a *de minimus* effort. As such, any bond should be nominal, as it was in *Tingling* and *Jackson*. Mem., p. 15; *see Prof'l Towing & Recovery Operators of Illinois v. Box*, 2008 WL 5211192, at *20 (N.D. Ill. Dec. 11, 2008) (requiring $1,000 bond because "it sees no potential for substantial injury to Defendant if it turns out that the preliminary injunction was granted in error.") (citing *Coyne-Delany Co. v. Capital Dev. Bd.*, 747 F.2d 385, 391 (7th Cir. 1983)).

providing the same contemporaneous access to civil complaints other state and federal courts already provide, and that she provides to paper-filed complaints, the balance of harms and public interest favor injunctive relief because "'injunctions protecting First Amendment freedoms are always in the public interest.'" *ACLU v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) (quoting *Christian Legal Soc'y*, 453 F.3d at 859).

**CONCLUSION**

The value of contemporaneous access is perhaps at its height when it comes to case-initiating documents like complaints. Unlike summary judgment or trial records filed in the course of an ongoing proceeding the public already knows about, "[a] newly-filed civil complaint serves as the opening bell in a legal contest." Girdner Dec., ¶ 34. When a complaint is withheld, even for a short time, the "public [is] unaware that a claim has been leveled and that state power has been invoked," *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016), and the new action is secret to all but the court and the plaintiff. That result is inconsistent with the "informed public discussion of ongoing judicial proceedings" the "First Amendment exists to protect." *Planet I*, 750 F.3d at 787. Because "the public cannot discuss the content of . . . civil complaints about which it has no information," *id*. at 788, this Court should enter preliminary injunction in CNS's favor.

Date: December 5, 2017

COURTHOUSE NEWS SERVICE

By: /s/ Brian A. Sher
One of its attorneys

Brian A. Sher, ARDC 6196964
Donald A. Cole, ARDC 6299318
BRYAN CAVE LLP
161 N. Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: (312) 602-5000

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Plaintiff Courthouse News Service's Reply in Support of its Motion for Preliminary Injunction was served on all counsel of record on December 5, 2017, via the Court's ecf system.

/s/ Brian A. Sher
Brian A. Sher