# **EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| COURTHOUSE NEWS SERVICE,<br><br>Plaintiff,<br><br>v.<br><br>DOROTHY BROWN, in her official capacity as the Clerk of the Circuit Court of Cook County, Illinois,<br><br>Defendant. | Case No: 17-cv-7933<br><br>Honorable Matthew F. Kennelly |

**REPLY DECLARATION OF WILLIAM GIRDNER**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, William Girdner, declare and state as follows:

1. I am the editor and publisher of plaintiff Courthouse News Service ("CNS"). I make this declaration after reviewing Defendant Dorothy Brown's papers in response to the CNS's Motion and Memorandum for Preliminary Injunction (the "Motion"). I have personal knowledge of the following facts, except where otherwise stated, and could and would competently testify to the same if called as a witness.

2. Capitalized terms not defined herein shall have the same meaning as ascribed to them in my original Declaration filed in support of the Motion.

3. When I have requested press access to new general jurisdiction civil complaints over the 27-year history of CNS, I have sometimes been met by clerks with the response that providing contemporaneous access would require that the clerk spend a great deal of money on extra personnel. In the paper-filing context, I have answered that journalists are not asking for more work from the clerk's staff, we ask for nothing more than an open door.

4. My experience at the head of CNS for that 27-year period has included, among other things, oversight of our coverage of state and federal courts across the nation as they transition from paper to e-filing, while relying on extensive discussions with court clerk's office personnel and our on-the-ground reporters who visit courts daily, in addition to dozens of in-person visits. In that experience, I have observed that nearly every operation in the paper-filing context is mirrored by an equal operation in the e-filing context. The same is true with press access. I am not asking for more work or faster work from the Clerk or her staff. I am asking the Clerk for nothing more than to stop preventing the press from seeing electronically-filed complaints that the Clerk's Office has received and that the Clerk's staff members themselves can see.

5. That contemporaneous access is the same access CNS has in many other courts that have moved from paper to e-filing courts, including most federal district courts and state courts in Alabama, Connecticut, Georgia, Nevada, New York, and Utah. Just a few days ago, a court in Fresno, California was added to that list. In my declaration accompanying CNS's moving papers, I explained that I think of this as an electronic "in-box," akin to the metal or plastic in-box in the intake area that holds paper complaints before they are docketed, and to which the press has traditionally had access.

6. Earlier in 2017, I asked the Clerk of Fresno Superior Court in California for an electronic in-box that would allow the press to see new civil complaints when they are received. Fresno Superior Court has mandated e-filing for civil complaints and other categories of filings, and is using the Odyssey software made by Tyler Technologies ("Tyler"), the same software Cook County Circuit Court plans to use for mandatory e-filing.

7. The Fresno Superior Court Clerk requested that Tyler develop an in-box, which resulted in the press receiving contemporaneous access to e-filed complaints through an electronic in-box on November 30, 2017 ("Fresno In-box").

8. Access to the Fresno In-box is based on a user name and password. The Fresno In-box provides the press with access to new civil complaints as well as exhibits, accompanying documents and subsequent filings in a contemporaneous fashion, on the day, and indeed as soon as they are received, any time of the day or night. On December 1, 2017, I was able to sign in and see the following screens and documents through the Fresno In-box:

a. Sign in:



b. Journalists can sort by case number. Note the "New Case - ID" designation and the electronic transaction number associated with it:

Press Review

Secure | https://california.tylerhost.net/secure/pressreview.aspx

Apps SCROLL NYSCEF Dallas

Location: System

Show 10 entries

Search:

| Location | SubmitDate | CaseNumber | File |
|---|---|---|---|
| Fresno - Civil | 2017/12/01 | New Case - ID 1032995 | Tork_Complaint.pdf |
| Fresno - Civil | 2017/12/01 | New Case - ID 1032995 | CCCS.pdf |
| Fresno - Civil | 2017/12/01 | New Case - ID 1032995 | Tork_Summons.pdf |
| Fresno - Civil | 2017/12/01 | New Case - ID 1032988 | CBUSA v DAVID FUENTES-Decl.pdf |
| Fresno - Civil | 2017/12/01 | New Case - ID 1032988 | CBUSA v DAVID FUENTES-Civil Cover Sheet.pdf |
| Fresno - Civil | 2017/12/01 | New Case - ID 1032988 | CBUSA v DAVID FUENTES-Summons.pdf |
| Fresno - Civil | 2017/12/01 | New Case - ID 1032988 | CBUSA v DAVID FUENTES-Complaint.pdf |
| Fresno - Civil | 2017/12/01 | New Case - ID 1032942 | USRrkiester_FGARCIACOVER_20171201114253.pdf |
| Fresno - Civil | 2017/12/01 | New Case - ID 1032942 | USRrkiester_FGARCIADRR_20171201114323.pdf |
| Fresno - Civil | 2017/12/01 | New Case - ID 1032942 | USRrkiester_FGARCIASUMM_20171201114347.pdf |
| Location | SubmitDate | CaseNumber | File |

Showing 1 to 10 of 2,185 entries

Previous 1 2 3 4 5 … 219 Next

c. The cases have not yet been processed, or the interchangeable term “accepted,” as shown by the lack of a permanent case number and the lack of any stamps:




Walter W. Whelan, Esq. (SBN 106655)
Brian D. Whelan, Esq. (SBN 256534)
Lucas C. Whelan, Esq. (SBN 292814)
WHELAN LAW GROUP, A Professional Corporation
1827 East Fir Avenue, Suite 110
Fresno, California 93720
Telephone: (559) 437-1079
Facsimile: (559) 437-1720
E-mail: walt@whelanlawgroup.com
E-mail: brian@whelanlawgroup.com
E-mail: lucas@whelanlawgroup.com

Attorneys for: Plaintiff SHAHROKH TORK DBA AUTO CENTER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF FRESNO, CIVIL DIVISION

| | |
|---|---|
| SHAHROKH TORK DBA AUTO CENTER, Plaintiff, v. REAGAN K. BAUER AND JANET BAUER DBA BAUER RENTALS, and DOES 1 through 20, inclusive, Defendants. | Case No. **COMPLAINT; AND JURY DEMAND** |



11025275

d. Below is an example of a processed complaint filed earlier in November, displaying a permanent case number and a file stamp in blue:

PANISH SHEA & BOYLE LLP
RAHUL RAVIPUDI, State Bar No. 204519
*ravipudi@psblaw.com*
ROBERT S. GLASSMAN, State Bar No. 269816
*glassman@psblaw.com*
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699

Attorneys for Plaintiffs

E-FILED
11/15/2017 3:48 PM
FRESNO COUNTY SUPERIOR COURT
By: E. Medina, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF FRESNO**

MARIANO AGUILAR, a minor, by and through his guardian ad litem, NATALIE CRUZ; and SAUL AGUILAR, a minor, by and through his guardian ad litem, NATALIE CRUZ,

Plaintiffs,

v.

UNITED AG PERSONNEL MANAGEMENT, INC., a business entity; ERROTABERE RANCHES, a business entity; and ALEXANDER PACHECO MEJIA, an individual,

Defendants.

Case No. 17CECG03865

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

**1. NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

9. In those few instances in which a court has had to direct a clerk of the court to restore the First Amendment right of access by way of granting CNS similar injunctive relief as it seeks here, the injunctive relief has been effective.

10. In a lawsuit brought pursuant to 42 U.S.C. § 1983 by CNS against the Harris County District Court Clerk (Houston, TX) in the Southern District of Texas in June 2009 (*Courthouse News Service v. Jackson*, Case No. 09-cv-1844), the court entered an Opinion and Order of Preliminary Injunction, directing the clerk and his deputy to provide contemporaneous access to the new civil complaints when they were filed. The court subsequently entered an Agreed Permanent Injunction and Final Judgment, requiring the clerk to continue to provide such contemporaneous access, with carve-outs for certain extraordinary circumstances. The clerk has

complied with that order by posting complaints (called "petitions" in Texas) on its website on the day they are received for filing, and which can be seen free of charge.

11. CNS filed a similar action in September 2011 under 42 U.S.C. § 1983 for declaratory and injunctive relief to remedy access problems at Ventura Superior Court (California) (*Courthouse News Service v. Planet*, Case No. 2:11-cv-08083-SJO-FFM). On May 26, 2016, following nearly five years of litigation and two trips to the Ninth Circuit, the Central District of California issued a 30-page ruling, permanently enjoining that clerk from refusing to make new civil complaints available to the public and press until after they are processed, and directed the clerk to make such complaints, including those filed in the last 90 minutes of the day, available in a contemporaneous manner from the time they are received by the court.

12. Prior to the court's order, the Ventura Superior Court records room, which was the only place where newly filed complaints could be seen (on computer terminals after the complaints were scanned), closed at 3 p.m., but parties could file new complaints into the court's drop boxes until 4:30 p.m., and they would receive that day's filing date. After the injunction issued in *Planet*, Ventura Superior Court began requiring drop box complaints to be filed by 4 p.m. to get that day's filing date, and also extended the records room hours so that new complaints could be seen until 5 p.m. This allowed the media to review complaints received late in the day, whereas prior to the injunction anything scanned after 3 p.m. could not be seen until the following court day at the earliest. As a result of these changes, CNS is now seeing virtually all new complaints at Ventura Superior Court on the day they are filed.

13. As noted in CNS's moving papers, CNS also brought a 42 U.S.C. § 1983 action in the Southern District of New York against the County Clerk of New York County in late 2016, alleging that the clerk's practice of withholding complaints filed with the New York State

Supreme Court, County of New York from press review until after processing (which the judge called "review and logging procedures") violated the First Amendment (*Courthouse News Service v. Tingling*, Case No. 1:16-cv-08742-ER). On December 16, 2016, the Southern District of New York granted CNS's motion for a preliminary injunction enjoining the clerk from denying access to newly filed civil complaints until after administrative processing and requiring him to provide contemporaneous access to documents upon receipt.

14. The clerk has complied with the injunction by making complaints available through the New York State Courts Electronic Filing web site immediately after the complaints are e-filed and before any clerk review or administrative processing. This new functionality was up and running within six weeks of the injunction being issued and has worked very well.

15. In Cook County Circuit Court, members of the press have traditionally received access to new paper-filed cases as soon as they come across the counter; in other words, as soon as they are received. That remains the reality for paper-filed cases currently in Cook County Circuit Court.

16. Those cases are reviewed by CNS and other news agencies in the press room, which does not have a curfew. CNS is not requesting that the Clerk's Office remain open 24 hours a day, 7 days a week. CNS is instead asking for contemporaneous access upon receipt. It is also CNS's position that in courts such as Cook County, where there has been a policy choice to give after-hours filings that day's filing date (as opposed to giving after-hours filings the next day's filing date, also an available policy option), there should also be a way for the press to have contemporaneous access to those filings. How such contemporaneous access is achieved is up for the Clerk to ultimately determine based on what works best for her Office.

17. One way in which such access can be accomplished is through an electronic in-box like the Fresno In-Box, similar in concept to the plastic in-boxes that currently hold paper complaints for journalists to review, through terminals in the press room while the press room is open. In practical terms, that would allow for contemporaneous access to the overwhelming majority of new cases.

18. In my experience, the lexicon for e-filing is matched by a parallel set of terms from the paper-filing world, a correlation commonly agreed upon by court IT personnel. An EFSP, or e-file service provider, delivers the electronic copy of a new complaint to the court clerk, just as the attorney service delivers a paper copy of the complaint to the clerk. The EFM, or e-file manager, automatically takes in or rejects the new e-filed complaint based on technical specifications, just as the counter clerk takes in or rejects a new paper-filed complaint based on matters of form. In e-filing courts, the fees are generally paid with a card number electronically, while in most paper courts, the new complaint is accompanied by a check which is handled by a single cashier. In the final operation, e-file "processing," a clerk reviews and fixes the pre-docketing entries by the filer, just as the paper "docketing" clerk would type in and correct docket entries. Both processing and docketing represent the last stage before a case enters into a court's case management system whether in paper or electronic form.

19. Newly filed paper complaints are assigned a case number immediately upon intake by the Clerk. But that is not the case with the e-filing protocol chosen by the Clerk, which is to process, *i.e.*, check the filer's pre-docketing and make corrections, before applying the credit card payment to the court's account. As a result, the case number is assigned a day or days after the e-filed case crosses the virtual transom into the court. That later application of the

case number is not "at the same time" as the assignment of a case number to a paper filed complaint, which is made immediately after it crosses the counter.

20. Most federal courts, including the Northern District of Illinois, follow a different protocol for case number assignment, which does parallel the protocol for paper filings. In those federal courts, the case number is assigned immediately and automatically as the e-file case crosses the electronic transom into the court and is received by the EFM software. In that case, the assignment of the case number does in fact mimic the assignment of the case number by the paper-filing intake clerk, and is indeed "at the same time."

21. What the Clerk is seeking to do in practical terms is to push the press away from the entry point for new civil complaints, and push them down the line behind what used to be called docketing and is now called processing. The Clerk is thus changing the *status quo* under the sheep's clothing of a technology change, one that should bring about better and faster public access rather than a delayed and unsteady substitute.

22. In my experience, clerks and their staffs have justified that kind of push-back by attempting to alter the definition of "contemporaneous" access. In this instance, the Clerk argues that she is providing access to the majority of the cases within "8 business hours" to "24 business hours," which translates to one to three actual court days. When the Clerk says "business hours," she is referring to the limited set of hours that the Clerk's Office is open to the public, which is often much shorter than the hours the staff works. For example, when I first set up our news coverage in Cook County Circuit Court, members of the Clerk's staff stayed long past the 4:30 p.m. hour when the office closed to the public, and journalists could review the new actions in the Clerk's Office up until around 7:00 p.m., so long as a supervisor was present.

23. But for those in the news business and for most people, time is a more firm concept. The minutes and hours pass in a steady flow and are not defined by "business hours." Events take place at given time on a given day and then time moves on steadily, all the while eating away at the importance and interest in reports about those events. A newsworthy public complaint filed late on Thursday and made available to the press 24 business hours later, is then reviewed by news reporters on the following Tuesday, five days after filing. News about the complaint is old by this time, and not made less so by a warped measure of hours and days. There is nothing contemporaneous about information reported five days late.

24. A traditional morning newspaper, delivered to one's doorstep, covers the news of the previous day, while an afternoon tabloid covers news from earlier the same day. But with the advent of nearly instantaneous publishing on the Internet, not dependent on a printing press, delivery trucks and newspaper boys and girls, the importance of, and interest in, news events fades almost entirely after a day, all the more so in three or more days.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Pasadena, California on this 5th day of December 2017.

[signature]
William Girdner