**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17 C 7933** |
| | ) | |
| **DOROTHY BROWN, in her official** | ) | |
| **capacity as the Clerk of the Circuit** | ) | |
| **Court of Cook County, Illinois** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Courthouse News Service (CNS) has sued Dorothy Brown, in her official capacity as the Clerk of the Circuit Court of Cook County, for injunctive and declaratory relief under 42 U.S.C. § 1983. CNS alleges violations of the First Amendment stemming from Brown's policy of withholding electronically-filed (e-filed) civil complaints from the press and the public until after they have been processed and officially "accepted" for filing by the Clerk's Office. CNS alleges that the resulting delay in access to new complaints constitutes a denial of timely and contemporaneous access to court records in violation of the First Amendment of the U.S. Constitution. CNS has moved for a preliminary injunction prohibiting Brown from enforcing her policy of withholding e-filed complaints until administrative processing is complete and requiring her to provide timely, contemporaneous access to the complaints upon filing. For the following reasons, the Court grants CNS's motion for a preliminary injunction.

**Background**

Courthouse News Service is a news service that covers civil litigation news from over 2,500 state and federal courts across the nation. Its subscribers include law firms, law schools, and other news media outlets. In addition to reporting on legal news through its website and various other publications, CNS provides written summaries of newsworthy new civil complaints in a "New Litigation Reports" e-mail publication that is sent to subscribers on a daily basis. To prepare the New Litigation Reports, CNS reporters typically visit their assigned courts to review new complaints in person, although some courts now make new complaints accessible over the Internet.

According to CNS, since it began covering the Circuit Court of Cook County in 1997, reporters have been afforded access to new paper-filed complaints on the same day they are filed. Specifically, press copies of new paper complaints are placed in a bin or tray behind the intake counter, and members of the press are permitted to reach over the counter to retrieve and review the press copies.

After the Circuit Court was selected to participate in Illinois's electronic filing pilot program in 2009, it became one of the first courts in Illinois to implement an optional electronic filing system. Prior to January 2015, the Clerk's Office simply printed out new e-filed complaints as they came in, which allowed reporters to review the e-filed complaints along with the paper ones. In January 2015, however, the Clerk's Office stopped printing e-filed complaints for the press. As a result, reporters now are unable to review new e-filed complaints until they are processed and posted electronically to computer terminals in the Clerk's Office and the courthouse press room. As a consequence of this change in policy, the press is not able to access a significant

2

number of e-filed complaints until at least the next business day after they are filed. According to CNS, from June 1, 2017 to September 30, 2017, only 61 percent (1462 of 2414) of new e-filed complaints were made accessible on the same day they were filed, in contrast with 94 percent (2917 of 3119) of new paper complaints.  *See* Pl.'s Mem. in Support of Mot. for Prelim. Inj. (Pl.'s Mem.), Ex. C (Angione Decl.), Ex. 4 at 1.  Brown counters that, during that same period, 90.9 percent of e-filed complaints were publicly available within one business day of filing, 94.7 percent were accessible within two business days, and 96.8 percent within three business days.[1]  *See* Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. (Def.'s Resp.) at 3.

In January 2016, the Illinois Supreme Court issued an order directing all Illinois Circuit Courts to make electronic filing of civil cases mandatory by January 1, 2018. (The Supreme Court recently extended by several months the date for compliance by the Circuit Court of Cook County.)  In early 2017, in light of the anticipated transition to mandatory e-filing, CNS contacted the Clerk to discuss the delays in access to e-filed complaints and propose various solutions.  To that end, CNS sent the Clerk two memoranda explaining how other state courts provide media and public access to e-filed complaints prior to processing.  As CNS explained, a Las Vegas trial court and four trial courts in Georgia have created an electronic in-box queue, which allows the press to view complaints immediately upon receipt, before they have been processed and

---

[1] CNS and Brown quibble over how these delays are counted and characterized. Brown argues that CNS inflates the length of delays by counting holidays and weekends, and CNS takes issue with Brown's attempt to measure delays in terms of "business hours."  These disputes over the exact length of the delays are immaterial to the Court's assessment of CNS's likelihood of success on the merits.

assigned a case number. CNS noted that access to such an electronic in-box could be provided remotely over the Internet or locally at courthouse computer terminals. CNS also provided a detailed description of the New York State Court Electronic Filing system website that makes newly filed documents remotely available to the public prior to manual review by the New York County Clerk's Office. CNS further noted that "the great majority of federal courts," including this one, make electronically filed documents available immediately upon receipt. Pl.'s Mem., Ex B (Girdner Decl.), Ex 8 at 3.

CNS received a written response from Brown in June 2017. The response, which was signed by the Clerk's general counsel Kelly Smeltzer, stated that e-filed complaints are not considered to be received or filed until they are accepted by the Clerk's Office. Girdner Decl., Ex. 11 (Smeltzer Letter). In support of this position, Brown cited General Administrative Order No. 2014-02 and the Illinois Supreme Court's Electronic Filing Standards and Principles, both of which provide that electronically submitted documents shall be considered filed "if not rejected" by the Clerk's Office. Def.'s Resp., Ex. B (Order No. 2014-02) at 3, Ex. C (Electronic Filing Standards and Principles) at 1. Brown further noted that providing access to e-filed complaints prior to acceptance by the Clerk's Office could create "mass confusion . . . leading to false reporting and potential liability for the court and the press" if the press reported on a complaint that was ultimately rejected for failure to comply with court rules. Smeltzer Letter at 2. Brown stated that she had no intention of changing her policy of withholding access to new e-filed complaints until they are officially accepted and electronically posted to the courthouse computer terminals.

CNS brought this action for injunctive and declaratory relief against Brown in

November 2017, and it moved for a preliminary injunction a short time later. Brown argues that the Court should deny CNS's motion because CNS cannot demonstrate a likelihood of success on the merits. Brown also contends that CNS cannot establish that any of the other requirements for the issuance of a preliminary injunction are met in this case.

### Discussion

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) that, in the absence of such relief, it is likely to suffer irreparable harm, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Higher Soc'y of Indiana v. Tippecanoe Cty.*, 858 F.3d 1113, 1116 (7th Cir. 2017). In cases implicating the First Amendment, "the [plaintiff's] likelihood of success on the merits will often be the determinative factor." *Higher Society*, 858 F.3d at 1116 (citation omitted). Preliminary injunctions requiring an affirmative act by the defendant are "ordinarily cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

As an initial matter, Brown's contention that the *Younger* abstention doctrine applies to this case lacks merit. Notwithstanding Brown's strained attempt to characterize the case as a challenge to "an ongoing, standing" Cook County Circuit Court order that supposedly requires the Clerk to review and officially accept or reject e-filed complaints prior to making them accessible to the public, there are simply no ongoing state judicial proceedings with which CNS's requested injunctive relief might interfere. Def.'s Resp. at 7. For that reason alone, *Younger* abstention is not

appropriate.  *See Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Absent

any *pending* proceeding in state tribunals, therefore, application by the lower courts

of *Younger* abstention was clearly erroneous.") (emphasis in original); *Barichello v.*

*McDonald*, 98 F.3d 948, 955 (7th Cir. 1996) (a "paramount concern[ ]" in the *Younger*

abstention context is that "the judicial or judicial in nature state proceedings must be on-

going").

       Brown's argument that she is not a proper defendant in this case likewise misses

the mark.  Brown contends that, by reviewing e-filed complaints before "posting them as

filed," she is merely following the mandates of the Illinois Supreme Court and the Chief

Judge of the Circuit Court of Cook County, as set forth in Order No. 2014-02 and the

Electronic Filing Standards and Principles.  Def.'s Resp. at 8.  Thus, according to

Brown, "CNS'[s] actual complaint is with the filing requirements of Order 2014-[02] and

the Electronic Filing Standards and Principles and not with the Circuit Clerk's

compliance with those requirements."  *Id.*  The problem with this argument is that Brown

points to nothing in Order No. 2014-02 or in the Electronic Filing Standards and

Principles that requires her to accept or reject or otherwise process e-filed complaints

prior to making them available to the public in some form.  Instead, Brown simply

asserts that Order No. 2014-02 and the Electronic Filing Standards and Principles

provide that the complaints are not "filed" until accepted.  In fact, what they actually say

is that electronically submitted documents shall be considered filed "if not rejected" by

the Clerk's Office.  Order No. 2014-02 at 3; Electronic Filing Standards and Principles at

1.  Because the Electronic Filing Standards and Principles and Order No. 2014-02 are

silent regarding whether the Clerk's Office may provide public access to e-filed

complaints prior to official acceptance—and because CNS claims instead that the allegedly unconstitutional delays in access to e-filed complaints stem specifically from Brown's policy of withholding them from the press until they are processed—Brown is the proper defendant in this action for prospective relief. *See, e.g.*, *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (to survive summary judgment on a section 1983 official-capacity claim, the plaintiff must show that an official policy or custom was the moving force behind the alleged constitutional violation); *Williams v. State of Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003) ("Official-capacity suits against state officials seeking prospective relief are permitted by § 1983. . . .").

"The public's right of access to court proceedings and documents is well-established." *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994).[2] As the Seventh Circuit has explained, "[p]ublic scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Id.* Although this right of access, which stems both from the common law and from the First Amendment, is well-established, it is not absolute. *Id.* Specifically, "the First Amendment provides a presumption that there is a right of access to proceedings and documents which have historically been open to the public and where the disclosure of

---

[2] The Seventh Circuit observed in *Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009), that, to the extent *Grove Fresh* was "premised upon a principle that pre-trial discovery must take place in . . . public unless compelling reasons exist for denying the public access to the proceedings," it was superseded by the 2000 amendment to Rule 5 of the Federal Rules of Civil Procedure. (internal quotation marks and citations omitted). That observation does nothing to undermine *Grove Fresh*'s general analysis of the First Amendment right of access to judicial documents and proceedings outside the pre-trial discovery context.

which would serve a significant role in the functioning of the process in question." *In re Associated Press*, 162 F.3d 503, 506 (7th Cir. 1998) (internal quotation marks and citations omitted). Although the presumption of access may be rebutted by a showing that suppression is "necessary to preserve higher values and . . . narrowly tailored to serve those interests," overcoming the presumption is a "formidable task." *Id.* (internal quotation marks and citation omitted). A court must resolve any doubts in favor of disclosure. *See Grove Fresh*, 24 F.3d at 897.

The Seventh Circuit has repeatedly observed that, where a First Amendment right of access is found, such access should be "immediate and contemporaneous." *Id.*; *see also In re Associated Press*, 162 F.3d at 506 ("[T]he values that animate the presumption in favor of access require as a necessary corollary that, once access is found to be appropriate, access ought to be immediate and contemporaneous.") (internal quotation marks and citations omitted); *Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1310 (7th Cir. 1984) ("[T]he presumption of access normally involves a right of *contemporaneous* access. . . .") (emphasis in original). In *Grove Fresh*, a group of journalists challenged the district court's decision to delay disclosure of certain documents that were either sealed or otherwise the subject of a protective order, despite the court's acknowledgement that the press had a right of access to any documents upon which the court relied in making its decisions. *See Grove Fresh*, 24 F.3d at 895. The Seventh Circuit concluded that "the right of the press to obtain timely access to judicial decisions and the documents which comprise the bases of those decisions is essential." *Id.* at 898. As the Seventh Circuit explained, because "[t]he newsworthiness of a particular story is often fleeting," delaying or postponing disclosure

8

could have "the same result as complete suppression." *Id.* at 897 ("[E]ach passing day may constitute a separate and cognizable infringement of the First Amendment.") (quoting *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975)).

Brown does not dispute CNS's contention that the First Amendment presumption of access applies to civil complaints. Instead, Brown argues that this presumption does not confer a right to *immediate* access to electronically submitted complaints. She contends that the delays at issue in this case are so minor that they do not implicate the First Amendment. In support of this contention, Brown cites a decision from the Central District of California, *Courthouse News Service v. Yamasaki*, No. SACV 17-00126 AG (KESx), 2017 WL 3610481 (C.D. Cal. Aug. 7, 2017). In that case, the Clerk of the Orange County Superior Court (OCSC) followed essentially the same procedure that Brown has implemented in the Cook County Circuit Court: before making new e-filed complaints publicly available, the OCSC Clerk reviewed them for confidentiality and "spent an additional few minutes completing the remaining steps necessary to formally accept the complaints for filing." *Id.* at *2. CNS alleged, as it does in this case, that the resulting delays in access constituted a violation of its First Amendment right of timely access to newly filed complaints, and it asked the court to enjoin OCSC from continuing this practice. *Id.* at *1. The district court denied CNS's motion for a preliminary injunction on the ground that it could not prove OCSC denied "timely access" to newly filed complaints where, during a three-month period, OCSC made 89.2 percent of newly filed complaints publically available within eight business hours and 96.5 percent available within eight to fifteen business hours. *Id.* at *3. The court concluded that that such "minor delays . . . simply do not constitute a First Amendment violation." *Id.*

9

Brown contends that the access delays in this case are equally minor when they are framed in terms of business days. By Brown's count, for the period from June 1, 2017 to September 30, 2017, the Clerk's Office made 90.9 percent of e-filed complaints publicly available within one business day, 94.7 percent within two business days, and 96.8 percent within three business days. Def.'s Resp. at 3. A declaration by the Clerk's general counsel further attests that "the vast majority of these complaints are made public, and viewable, within twenty four (24) business hours of filing." Def.'s Resp., Ex. A ¶ 7. Brown argues that this Court should adopt the reasoning of the district court in *Yamasaki* and deny CNS's motion for a preliminary injunction on the ground that the delays in this case are likewise so minor that they do not interfere with CNS's First Amendment right of timely access to new complaints.

CNS contends that *Yamasaki* was wrongly decided and points to three other district court decisions that it says adopt the correct approach to the First Amendment issue of timely access. In *Courthouse News Service v. Jackson*, No. CIV A H-09-1844, 2009 WL 2163609, at *1-2 (S.D. Tex. July 20, 2009), the court granted CNS's motion for a preliminary injunction prohibiting the Harris County District Clerk from denying timely access to newly filed civil petitions. Citing *Grove Fresh*, the court concluded that an access delay of twenty-four business hours for petition indexing, verification, and other processing constituted a denial of timely access that was not narrowly tailored to serve an overriding government interest. *Id.* at *2-4. The district court ordered that CNS "be given access on the same day the petitions are filed," except in certain situations, such as when the filing party is seeking a temporary restraining order or has filed the pleading under seal. *Id.* at *5.

In *Courthouse News Service v. Planet*, No. CV 11-08083 SJO (FFMx), 2016 WL 4157210, at *11-13 (C.D. Cal. May 26, 2016), *judgment entered*, 2016 WL 4157354 (C.D. Cal. June 14, 2016), although the court concluded that the First Amendment did not categorically require *same-day* access to newly filed civil complaints, it determined that the right of timely access arose when the complaint was received, rather than after processing was complete. Accordingly, the court explained that the policy of the Clerk of the Ventura County Superior Court to delay public access to newly filed complaints until after they were processed would be permissible only if it was "essential to preserve higher values and . . . narrowly tailored to serve that interest." *Id.* at *13 (citation omitted). In addition to concluding that the clerk had not met his burden of proving that the processing policy was essential to preserve higher values, the court concluded that the policy was not narrowly tailored to serve a substantial governmental interest, in light of the existence of "a number of alternative policies and procedures . . . [that] would have provided improved access for the public and the press." *Id.* at *17. The court issued an injunction prohibiting the clerk from refusing to make newly filed civil complaints available to the public until after they are processed. *Id.* at *19.

In *Courthouse News Service v. Tingling*, No. 16-cv-08742, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016), the court granted CNS's motion for a preliminary injunction prohibiting the County Clerk of New York County from withholding access to newly filed civil complaints until after "clerical processing." During the hearing on the motion, the court noted that a "substantial" percentage of complaints were not made accessible to the public on the same day they were filed. *Courthouse News Serv. v. Tingling*, No. 16-

cv-08742, 2016 WL 8739010, at 37 (S.D.N.Y. Dec. 16, 2016).[3]  The court then cited

both *Grove Fresh* and *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir.

2006) ("Our public access cases and those in other circuits emphasize the importance

of immediate access where a right to access is found."), for the proposition that, where

a right of access is found, such access should be immediate and contemporaneous.  *Id.*

at 49.  The court concluded that, as was the case in *Planet*, the County Clerk had failed

to meet his burden of demonstrating that his policy of delaying access to new

complaints until after they are processed was narrowly tailored or essential to preserve

higher values.  *Id.* at 52.

As previously noted, the Seventh Circuit, in particular, has emphasized that the

First Amendment right of access to judicial documents contemplates "immediate and

contemporaneous" access.  *Grove Fresh*, 24 F.3d at 897; *In re Associated Press*, 162

F.3d at 506.  For this reason—and in recognition of the fact that "[t]he newsworthiness

of a particular story is often fleeting," *Grove Fresh*, 24 F.3d at 897—the Court concludes

that even the supposedly "minor" delays in access that were discounted by the court in

*Yamasaki* cannot be so easily dismissed.  Consistent with the approach taken by the

courts in *Planet* and *Tingling*, the Court concludes that a policy of delaying access to e-

filed complaints until after they are officially accepted or rejected or otherwise processed

by the Clerk violates the First Amendment right of timely access to those complaints,

unless the Clerk can demonstrate that the policy is narrowly tailored and necessary to

preserve higher values.  *See, e.g.*, *In re Associated Press*, 162 F.3d at 506.

As previously noted, Brown contends that she is justified in withholding e-filed

---

[3] Pinpoint citations are to the ECF version of the *Tingling* hearing transcript.  *See* Girdner Decl., Ex. 2.

12

complaints from the public and the press until after processing because both Order No. 2014-02 and the Electronic Filing Standards and Principles provide that electronically submitted documents shall be considered filed "if not rejected" by the Clerk. Order No. 2014-02 at 3; Electronic Filing Standards and Principles at 1. But as the Court has discussed, Brown points to nothing that would require her to delay access to e-filed complaints until after they are processed and officially accepted.

Brown additionally argues that her office needs time to fulfill its duty to ensure that e-filings do not contain certain types of documents—including documents containing confidential and personal identity information—that may not be electronically filed pursuant to Order No. 2014-02. The Court is not convinced that it is, in fact, the responsibility of the Clerk to ensure that such documents are not included in e-filings, as the Illinois Supreme Court rules pertaining to confidential and personal identity information specifically place the burden of compliance on the filing parties. *See* ILCS S. Ct. Rule 15(c) ("Neither the court, nor the clerk, will review each pleading for compliance with this rule."); ILCS S. Ct. Rule 138(e) ("Neither the court nor the clerk is required to review documents . . . for compliance with this rule. If the clerk becomes aware of any noncompliance, the clerk may call it to the court's attention. The court, however, shall not require the clerk to review documents . . . for compliance with this rule.").

But even if the Clerk has the responsibility to check all e-filed complaints for compliance with Order No. 2014-02, and even if one assumes that this responsibility constitutes a "higher value" that might justify a delay in access, Brown has made no effort to explain how her policy of withholding all access to e-filed complaints until

13

acceptance is narrowly tailored to that interest. In fact, Brown has made no effort to explain why it is not feasible for her to adopt any one of the various methods that numerous other state and federal courts currently use to provide public access to e-filed complaints before they have been fully processed. For that reason alone, Brown has failed to meet her burden of demonstrating that her policy of delaying access to e-filed complaints until official acceptance is narrowly tailored to preserve any higher value. *See Tingling*, 2016 WL 8739010, at 50-52 (court clerk did not meet his burden of demonstrating that policy of withholding access to newly filed complaints until they have been screened for compliance with state law and court rules is either essential to preserve higher values or narrowly tailored to serve a substantial government interest); *Planet*, 2016 WL 4157210, at *16-17 (court clerk failed to meet burden where he argued that policy of processing complaints prior to providing access was necessary to prevent the disclosure of confidential information, to ensure accurate accounting and input of information into the case management system, and to maintain the integrity of the case file). The Court therefore concludes that CNS has demonstrated the requisite likelihood of success on the merits with respect to its claim that Brown's current policy violates its First Amendment right of timely access to new e-filed complaints.

CNS has also met the other requirements for entry of a preliminary injunction. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). There is an important public interest in ensuring that the press and the public have timely access to new civil complaints. *See, e.g.*, *Courthouse News Serv. v. Planet*, 750 F.3d 776, 788 (9th Cir. 2014) ("[T]he public cannot discuss the content of . . . complaints about which it

14

has no information."); *Jackson*, 2009 WL 2163609, at *5 ("There is an important First Amendment interest in providing timely access to new case-initiating documents."). Additionally, the Seventh Circuit has acknowledged that "even short deprivations of First Amendment rights constitute irreparable harm." *Higher Society*, 858 F.3d at 1116; *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Christian Legal Society*, 453 F.3d at 859 ("The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate . . . ."). These principles are no less true when the First Amendment deprivation in question is a deprivation of the right of timely access to judicial proceedings or documents than when it involves a deprivation of the right of free expression. *See Planet*, 750 F.3d at 787 ("CNS's right of access claim implicates the same fundamental First Amendment interests as a free expression claim, and it equally commands the respect and attention of the federal courts.").

The balance of equities likewise tips in favor of entry of a preliminary injunction. In the absence of an injunction, CNS will continue to be deprived of its First Amendment right of timely (immediate and contemporaneous) access to e-filed complaints. And Brown has not explained why she cannot implement any of the measures other state and federal courts have taken to provide access to e-filed complaints prior to official acceptance and other processing. *See Tingling*, 2016 WL 8739010, at 53. Brown's conclusory and unsupported assertion that she would require additional funding and staff to provide immediate access to e-filed complaints is insufficient to tip the balance in her favor.

15

Accordingly, the Court concludes that: (1) CNS has demonstrated a likelihood of success on the merits of its claim that Brown's current policy of withholding new e-filed complaints until after formal acceptance and other administrative processing by the Clerk's Office violates CNS's First Amendment right of timely access to those complaints, (2) CNS will suffer irreparable harm in the absence of an injunction, (3) the balance of the equities favors CNS, and (4) the issuance of a preliminary injunction prohibiting Brown from enforcing her policy of withholding e-filed civil complaints until official acceptance and requiring her to provide contemporaneous access to the e-filed complaints upon receipt is in the public interest.

## Conclusion

For the foregoing reasons, the Court grants CNS's motion for a preliminary injunction [dkt. no. 6]. Brown is given thirty days from today's date to implement a system that will provide access to newly e-filed civil complaints contemporaneously with their receipt by her office. The Court orders CNS to post a bond in the amount of $5,000.00 as security pursuant to Federal Rule of Civil Procedure 65(c). If the parties believe a more specific order embodying the Court's grant of a preliminary injunction is required, they are to immediately confer regarding the wording of the order and are to present a draft for the Court's review and signature by no later than January 10, 2018.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 8, 2018

16